## White v. White.

(Decided March 13, 1913.)

### Appeal from Whitley Circuit Court.

1. Divorce—Alimony—Abandonment.—While a judgment of divorce improperly granted to the husband cannot be reversed, such ali-

mony may be adjudged to the wife as on the whole case she ought to receive.

2.  Divorce—Alimony—Abandonment by the Husband.—Where tne overwhelming weight of the evidence shows that the husband abandoned the wife, she is entitled to alimony, though the husband have no property, if, as a matter of fact, he is able-bodied and capable of earning wages.

W. R. HENRY for appellant.

E. G. UNDERWOOD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, W. N. White, brought this action against his wife, Louise White, to obtain a divorce on the ground of abandonment. She filed an answer and counterclaim against plaintiff, asking for a divorce and alimony on the same ground. On final hearing the chancellor granted plaintiff a divorce, but adjudged that defendant was the owner of the household goods and kitchen furniture in her possession. He further adjudged that defendant was not entitled to alimony, and from this part of the judgment defendant appeals.

While a judgment of divorce improperly granted to the husband cannot be reversed, such alimony may be adjudged to the wife as on the whole case she ought to receive. Masterson v. Masterson, 20 Ky. L. Rep., 631, 46 S. W. 20.

Two witnesses, James Morgan and Theodore Heinze, Jr., testified for plaintiff. Morgan testified that he was acquainted with the parties, and that he had been at their house. At the time he testified plaintiff and defendant had been living apart for about 14 months. Plaintiff was at work in Bourbon County, and while he was gone defendant left plaintiff's house without any fault on his part. On cross-examination witness stated that he was not present when plaintiff and defendant separated. He knew when plaintiff came back from Paris, where he had gone to work, and that he and defendant had not lived together. All he knew about the separation was "by passing around there and not seeing them at home." He knew plaintiff did not leave defendant, because he was so good to her when at home. Plaintiff did leave her when he went to Paris, but he went out there to work and provide for her. He knew this because people told him

that plaintiff went out there to work, and plaintiff took his tools with him. While plaintiff was away, defendant moved into another building a few yards distant. Did not remember the cause of their separation.

Theodore Heinze, Jr., testified that he was 18 years of age, and resided at Williamsburg, Kentucky. He was personally acquainted with the parties to the action; had visited their house while they lived together as husband and wife. Plaintiff treated the defendant well so far as he knew. While plaintiff was away at work his wife moved to another place, and since that time they had not lived together. It was in the month of February, 1911, when she abandoned the home of plaintiff without fault on his part.

For defendant, Charlie White, aged 20 years, testified that plaintiff and defendant were his father and mother. In the month of February, 1911, his father just walked off and left his mother. After his father left, his mother remained in the house until August 24, 1911. She then moved to another house about fifty yards away. He never saw his father again until June, 1911. When his father returned he stayed with his sister, Vina Hammock. He never saw his father at home with his mother after he returned. His father was an able-bodied man. His mother always treated his father well. He had heard his father curse his mother. On cross-examination, witness stated that when his father left he said he was going to leave. The house his father and mother were living in at the time his father went away was a rented house.

Julia McFarland testified that she lived next door to the plaintiff and defendant. Plaintiff left the defendant in the month of February, 1911. Since that time he had not lived with her. She never saw plaintiff at the home of defendant after he came back from Paris. The reputation of James Morgan and Theodore Heinze, Jr., for veracity was bad.

Mrs. James Byrd testified that she had known the parties for ten or eleven years. When plaintiff returned after leaving the defendant he made his home at Mrs. Hammock's. Mrs. White was living in the same house when he returned. Witness had frequently been to their home, and defendant always treated plaintiff well. Witness also said that the reputation of Morgan and Heinze for veracity was bad. On cross-examination, witness said that she knew Mr. White left his wife. Why he left she did not know.

: Mrs. Louise Massingale testified that plaintiff and defendant were living in her house at the time of the separation. Mrs. White was living in the same house when plaintiff returned to Williamsburg. Plaintiff did not go to his own home when he returned, but made his home with his sister, Vina Hammock. After plaintiff's return to Williamsburg, defendant moved into a brick house a short distance away, and had lived there ever since. She had often been to plaintiff's and defendant's house, but had never heard of a word between them. Judging from what the neighbors said of Bud Morgan and Theodore Heinze, Jr., their reputation for veracity was bad.

Mrs. Spence Lay testified that plaintiff left his home during the month of June, 1911, but returned sometime during the month of June, 1911. When he returned he made his home with his sister, Mrs. Hammock. Defendant lived in the same house when plaintiff returned to Williamsburg that they lived in when he went away. Defendant had on hand a small amount of household goods. Defendant had no other property or income. The reputation of James Morgan and Theodore Heinze, Jr., for veracity was bad. On cross-examination, witness stated that she understood that plaintiff had gone away to get work. Plaintiff was a very poor man, and owned no property so far as she knew. She saw plaintiff the day after he returned to Williamsburg.

· Plaintiff predicated his right to a divorce on the fact that while he was away working for his wife, she abandoned his home. The witnesses who testify in his behalf know absolutely nothing about the circumstances under which he left home. While saying that he left for the purpose of getting work, they admit that they obtained this information from neighbors. The only fact that they testify to is that while plaintiff was gone, defendant left the rented house which they had formerly occupied. They do not testify that plaintiff, on his return, went to the house which he had formerly occupied. They say that he went to live with his sister. Both witnesses for plaintiff were impeached. On the other hand, several witnesses, including the son of plaintiff and defendant, testify emphatically that defendant treated plaintiff in a proper manner, and that he voluntarily left his home. He returned to Williamsburg long before defendant moved to the adjoining house. Instead of returning to his home he went to live with his sister. This is not a case where the judgment of the chancellor should be up-

held because the evidence is conflicting, and upon a con-- sideration of the whole case the mind is left in doubt, but a case where the overwhelming weight of the evidence is in favor of the defendant, and leaves no doubt that plaintiff abandoned her.  Under .these circumstances, defendant is clearly entitled to alimony, and the mere fact that plaintiff is a poor man and has no property is no reason for denying her relief, when, as the record shows, he is able-bodied and capable of earning wages.  Taking into. consideration the circumstances and conditions of the parties, we conclude that plaintiff should pay defendant alimony at the rate of $10 a month for a period of 15 months, making the total sum to be paid $150.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.