## Meadors v. Meadors.

### (Decided March 5, 1926.)

### Appeal from Whitley Circuit Court.

1. Divorce—Depriving Wife of Custody of Child Awarded Her in Divorce Held Erroneous, in Absence of Evidence Showing Her Unfitness to Retain Custody.—Where, on grant of divorce to wife, custody of infant daughter was awarded to her, action of chancellor depriving wife of custody on husband's motion held erroneous, in absence of proof of her unfitness or some change in status of child, making change in custody necessary to child's welfare.

2. Divorce—Evidence Held to Warrant Divorced Wife's Retaining Custody of Infant Daughter Awarded Her in Divorce Proceedings.—Evidence held to warrant continuance of divorced wife's custody of infant daughter awarded her in divorce proceedings, and to show that welfare of infant would be conserved thereby.

3. Divorce.—It is tendency of courts to give care of children, when parents are divorced, to the spouse not in fault.

4. Divorce.—Children of tender years are placed by courts in custody of mother whenever she is found worthy of the trust.

5. Divorce—Court of Appeals May Review Order of Chancellor Placing or Transferring Custody of Infant Child (Ky. Stats., Section 2123).—Court of Appeals has jurisdiction to review an order of the chancellor placing or transferring the custody of an infant child, although, under Ky. Stats., section 2123, the court in divorce proceedings may revise orders for care and custody of minor children.

O. W. BLACK and R. L. POPE for appellant.

J. B. WALL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Etta Meadors, now Etta Pearman, and the appellee, L. B. Meadors, were formerly husband and wife, but on March 6, 1920, they were divorced *a vinculo* by a judgment of the Whitley circuit court, rendered in an action previously brought therein by the wife against the husband for that purpose, to which the

latter made no defense. The judgment of divorce awarded the appellant her costs expended in the action, including an attorney's fee; gave her the custody of their only child, May Marie Meadors, then about three years of age, and required the defendant to pay the mother toward the support of the child $10.00 per month, on the first day of each month until the latter should become sixteen years of age.

Very soon after the granting of the divorce the appellee again married and by that marriage he and his present wife have two children. More than three years after obtaining her divorce from the appellee, the appellant became the wife of James Pearman, by whom she has not had a child. The custody of the child, May Marie Meadors, remained with the mother as adjudged by the court until the September term, 1924, of the Whitley circuit court, on the 4th day of which and 18th day of September, the appellee, L. B. Meadors, by a written motion filed in that court, accompanied by his own and other affidavits intended to support it, asked that the action in which the appellant, his former wife and mother of the child, had been granted the divorce and given the custody of the child, be redocketed and that so much of the judgment therein as gave the mother the custody of the child and required of him the payment of $10.00 per month for the support of the latter, be set aside, and that in lieu thereof the court enter another judgment transferring from the mother to him the custody and sole control of the child and relieving him of the payment to the mother of the $10.00 per month for the child's support.

The motion was resisted by the appellant, the grounds thereof being set forth in her affidavit and supported by those of a number of other persons testifying in her behalf. Indeed, all the evidence introduced on the motion, except what was contained in the pleadings, depositions, judgment and orders constituting the record in the action for divorce, was furnished by affidavit. Preliminary to a consideration of the motion affecting the custody of the infant daughter of the appellant and appellee, the circuit court entered an order redocketing the action for divorce, and following the hearing and submission of the motion on its merits, rendered judgment sustaining it and modifying the previous judgment in the action for divorce with respect to the custody of the child, by setting aside so much thereof as placed her in the custody and control of the mother and required the

father to pay $10.00 per month for her support, and in lieu thereof transferring her custody and control to the father. The appellant excepted to the judgment and was granted an appeal therefrom, her prosecution of which brings to this court for review the ruling and judgment complained of.

Had there been no other evidence introduced on the hearing of the appellee's motion for a modification of the judgment in the action of his former wife for a divorce with respect to the custody of their infant daughter, than that contained in the several affidavits filed by him in support thereof, the consideration we have given the evidence furnished by those affidavits constrains us to declare it insufficient to authorize the judgment of the chancellor sustaining the appellee's motion and transferring the custody of the child from the mother to the father; for not one of those affidavits, though they were six in number, including that of the appellee, attacked the reputation of the appellant or that of her present husband, or charged any moral delinquency in the life or conduct of either of them, lack of intelligence, or affection for the child on the part of either, or financial disability that could disqualify the mother, aided by the stepfather, to properly rear, train and educate her.

It is true the affidavit of the appellee charged that the appellant was unfit to have the custody of the child. He did not claim, however, that such unfitness arose out of any immorality or misconduct or her part or that of her present husband, but because they with the daughter were residing with the appellant's uncle, Dan Goff, by whom she had been reared from childhood, and whose reputation for morality the affiant stated was bad. The latter failed to state in what respect Goff's reputation was bad, unless the explanation is found in his further statement that he was addicted to the use of profane language. It was not, however, stated by the affiant that Goff had at any time indulged in the use of profane language in the presence or hearing of the little girl.

The five remaining affidavits introduced in evidence by the appellee all bore mainly upon his general reputation and fitness and that of his present wife to have the custody and care of the child of his marriage with the appellant. And while three of these affidavits contained statements to the effect that the reputation of Dan Goff was bad, none of the three indicated for what, or in what particular it was bad. The ground upon which the affi-

ants seemed to rest their approval of the appellee's reputation and fitness to take from the appellant and retain the custody and control of their infant daughter, was the fact that in March or April, 1924, and about six months before the filing of his motion seeking the custody of the daughter, he became a member of a Williamsburg church, of which he and his present wife have since been attendants.

As it appears from the affidavits of the appellee's witnesses that they all reside in the town of Williamsburg and that those of the three making the indefinite attack on the reputation of Dan Goff, a resident of the town of Corbin, with whom the appellant, her husband and daughter were living when this proceeding was instituted and are yet living, had no such knowledge of Goff's life or conduct, or of the opinion entertained of him by his associates and acquaintances in or around Corbin, as would have enabled them to testify understandingly as to his reputation, we fail to see why such evidence, even had it been sufficient to prove Goff's reputation bad, in the absence of a showing that he had been charged with the care of the infant daughter of the appellant and appellee, should have controlled the chancellor's decision of the controversy between the latter as to her custody.

In view, therefore, of the total failure of the appellee's evidence to prove the unfitness of the appellant to retain the custody of the infant daughter, or some change in the status of the child that made her custody by the appellee necessary to her welfare, we must declare the action of the chancellor in depriving the appellant of the custody of the daughter and giving it to the appellee reversible error.

In order to further demonstrate, however, the error committed by the chancellor in transferring the custody of the infant daughter from the mother to the father, we will briefly refer to the evidence upon which the appellant relied to maintain her right to the continued custody of the daughter, which is contained in the depositions taken in the action of divorce brought by her against the appellant in the Whitley circuit court, and in the affidavits, including her own and that of her present husband, of fourteen witnesses, all appearing in the bill of exceptions and no part of which was objected to by the appellee on the hearing of his motion in this proceeding.

The depositions proved the grounds upon which the appellant sued for and was granted the divorce. One of these grounds was that after the appellee's marriage to the appellant and while they lived together he was untrue to his marriage vows, and shortly before their separation contracted a loathsome venereal disease, which but for the care and treatment of a physician he would have communicated to her. It was also shown by the depositions that he became dissipated, led a grossly immoral life and was cruel and inhuman in his conduct toward and treatment of his wife, the appellant. He neither denied the facts then proven nor attempted to disprove them; and upon the record and evidence as thus presented in that action the circuit court by the judgment granting the appellant a divorce gave her the custody of their infant daughter and only child.

Not until after the daughter became seven years of age did he make this application to the Whitley circuit court to transfer her custody from the mother to him, and by the judgment of the court accomplished that end. The question may well be asked what change, if any, in the life or character of the appellee, or in the status of the child, or her mother, justified the action of the court in taking the daughter from the mother and giving her to him? Was it because he had abandoned his dissipated habits and immoral life and established for himself a good reputation. Thirteen of the fourteen witnesses whose affidavits were introduced for the appellant, substantially declared that this was not true, and agreed that his reputation is yet bad and that he is still unfit to be intrusted with the custody of his and the appellant's infant daughter. One of the witnesses, Lydia White, testified that in March, 1923, and after his marriage to his present wife, the appellee, L. B. Meadors, carried to Hazard a woman and there lived with and passed her off as his wife, and that she (the witness) was then in Hazard on a visit and knew that the woman he there lived with and claimed as a wife was not his wife.

These witnesses, who live in Corbin, where the appellant and her present husband reside, and one of whom is a minister of the gospel, another a teacher in the Corbin public school and yet another a Sunday school teacher, all testified that the appellant is the only proper person to have the custody of her daughter, that she is a Christian woman and affectionate mother, whose care of the daughter is all that could be required of a mother, that

the daughter is well dressed and clean in person, a constant attendant at church with the mother and also at Sunday school. In addition James Pearman, the present husband of the appellant, testified in the affidavit made by him as to his affection for his stepdaughter and expressed his intention to assist his wife, the appellant, to properly care for and educate the child. It also appears from his affidavit that he is in the employ of the L. & N. Railroad Company on a salary of $5.28 per day, and that he expects to soon own a home, which the appellant and her daughter will share with him.

The witnesses referred to, some of whom had boarded with Dan Goff, also testified as to his Christian character and excellent reputation and that of his family, in whose home the appellant, her husband and daughter are temporarily residing.

Upon the record before us there can be no doubt of the appellant's right to have the custody of her daughter and that the welfare of the latter will be conserved thereby. It is the tendency of the courts to give the care of the children of a marriage when the parents are divorced to the spouse not in fault; and if the children are of tender years they are placed by the courts in the custody of the mother whenever she is found worthy of the trust. 9 R. C. L., section 191; Stevens v. Stevens, 194 Ky. 180; Shallcross v. Shallcross, 135 Ky. 418; Campbell v. Campbell, 209 Ky. 571. Moreover, it is provided by section 2123, Ky. Stats., that the court in divorce proceedings may make an order for the care, custody and maintenance of minor children, and at any time thereafter, on the application of either parent, may revise the same, having in all cases the welfare of the children principally in view.

In Adams v. Adams, 1 Duv. 167, it is in the opinion of this court declared:

"The welfare of infancy involving that also of the Commonwealth, defines the sphere of parental rights and duties, and these preferred rights and duties are correlative. The character and destiny of the citizen are moulded by the domestic tutelage of the nursling, and therefore, whenever the parents are separated by divorce, although *prima facie* the abstract right and duty of the father are superior to those of the mother, yet the court dissolving the union should confide the care and custody of their infant child to the parent most trustworthy and cap-

able, and if neither of them shall be worthy of such a delicate and eventful trust, the interest of the child and the public may authorize a transfer of the custody to a stranger.''

In all such cases this court has jurisdiction to review an order of the chancellor placing or transferring the custody of an infant child. Caudill v. Caudill, 172 Ky. 460; Anderson v. Anderson, 152 Ky. 773; White v. White, 152 Ky. 769; Wills v. Wills, 168 Ky. 35.

For the reasons indicated the order or judgment of the circuit court appealed from is reversed and the proceeding remanded to that court, with direction to set it aside, restore the custody of the infant to her mother, the appellant, and also require the appellee to pay to the mother for the support of the infant $10.00 per month, payable on the first of each month, until the latter reaches the age of sixteen years.