# Harmon v. Harmon

(Decided March 3, 1936.)

WILLIAM B. GESS and THOMAS A. BALLENTINE for appellant.

C. C. BAGBY and ARTHUR HILE for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

The parties to this appeal were married in August, 1928. Something like a year after their marriage a baby boy was born to them who was christened Joseph Earl. Differences apparently more fanciful than real, engendered and fostered to some extent by outside influences, caused disagreements and quarrels, resulting in a separation within a few months after the birth of the child. Following the separation, a contract was entered into between the parties whereby the father surrendered the custody of the child to the mother. The latter left

Louisville where she had made her home since their marriage, going to the home of a sister in Catlettsburg, where she remained for some time and until a reconciliation was effected. This reconciliation, however, was of short duration, and ended in another and final separation, and the parties again entered into a written contract on October 9, 1930, when the child was fourteen months of age, whereby it was agreed that the mother should have custody and control of him, with reasonable opportunity afforded the father to visit him at such times and places as agreed upon between the parties, and, in the event of their failure or being unable to reach an agreement as to the time and place of such visits, then the time and place to be fixed by the judge of the Jefferson county court, juvenile division.

In November, 1931, William Harmon filed an action in the Jefferson circuit court against Margaret Harmon, seeking a divorce on the statutory ground of abandonment. The suit was not contested, and the court, after hearing the evidence, granted plaintiff the relief sought. It was further adjudged that each party should restore to the other any property obtained directly or indirectly from or through the other during the marriage, in consideration of or by reason thereof. It was alleged in the petition that Joseph Earl Harmon was in the care, custody, and control of the defendant by separate agreement between the parties, which, among other things, provided that plaintiff should pay to defendant the sum of $5 per month to provide for the support and maintenance of the child. Nothing was said in the judgment concerning the custody of the child, and the court apparently left the parties where he found them with respect to the custody of the child, except that by subsequent order plaintiff was permitted to see and to have the child with him part of the time.

Without going into detail concerning the further pleadings and charges and counter charges made by the respective parties, it is sufficient to say that subsequent proceedings resulted in a judgment and order decreeing that the control of the child be awarded to William Harmon on condition that he be kept at the home of his paternal grandmother, Mrs. Mattie Harmon, in Perryville, Ky., and that defendant be permitted to have the care and control of him during the periods and for such time as the school of Perryville

was in vacation, including regularly established holidays at the school. Defendant is appealing.

In June, 1932, Mrs. Harmon was married to W. K. Watkins at Lexington, and they have since resided at that place. William Harmon has also remarried, and, while he makes his home with his mother at Perryville, he is employed part time by a firm in Louisville and at such times as he is engaged under his employment, he remains in Louisville.

The chancellor on the final hearing handed down a written opinion wherein it is said in part:

"The mother is devoted to the boy. Personally I do not think that the father is to be considered. The question is whether the boy should live during the school term with his mother at Lexington, or his paternal grandmother at Perryville. Of course he will be with his mother in the summer.

"The case for the mother is a strong one—absolute maternal devotion, high character and intelligence. Unfortunately the mother impresses me as nervous to the point of neuresthenia—a restless habit of moving about and taking the little boy with her. The mother has remarried; her husband is dependent on earning power; his employment is precarious, and loss thereof may involve a recurrence of this restless moving about."

Then, after referring to evidence concerning the environment in which the child would be thrown in his grandmother's home at Perryville, the chancellor, continuing, said:

"I do not see how anyone could size up the environments in Lexington and Perryville and not be of the opinion that this glorious little boy will have a better opportunity if his early school years are passed in the smaller town. If I am to hold that the mother should have this boy, if a proper person, then there is no doubt of her right. She is a proper person, eminently proper. I do not consider the father at all. If I am to hold that this promising little boy is to have the best opportunity in life, then there is no doubt in my mind that he should be schooled and raised in Perryville."

We have read and carefully considered the mass

of evidence contained in several volumes of the record. Here and there will be found scraps of evidence tending to reflect upon the respective parties and which, standing alone, might indicate some lack of those qualities of character and temperament properly fitting one to have the custody of a young child; however, on the whole, the conclusions voiced by the chancellor respecting the case made for the mother are amply sustained by the evidence. While the chancellor in determining the issues found it unnecessary to, and stated that he did not, consider the father at all, it may be said to the credit of Mr. Harmon that the evidence shows him to be a man of good character and intelligence, devoted to and having the best interest of the child at heart. In determining true character and fitness to assume the obligations of parenthood, the evidence unfavorable to either of the parties, when considered in relation to all the proven facts, is of minor and inconsequential importance; therefore we deem it highly appropriate to refrain from recital of or further reference to it.

All things being equal, our statutes relating to the custody of children make no distinction or discrimination as between the father and mother, and, so far as the personal rights of the father are concerned, he has by contract waived them and surrendered the custody of the child to its mother. This he had a right to do, and, as between the parties, the contract may be upheld (Thompson v. Childers et al., 231 Ky. 179, 21 S. W. [2d] 247); but vastly more than their personal rights is to be taken into account, since the happiness and welfare of a child who is not a party to the contract and who is in no way responsible for the unfortunate position in which he is found are involved, and it is to him and his best interests that the court will give paramount consideration.

Mr. and Mrs. Watkins own no home, and, as stated by the chancellor, have moved about considerably; however, they have, since their marriage, maintained a home in Lexington, and the evidence conduces to show that the child has been properly clothed, nurtured, and trained. As will be noted, the chancellor in summing up said: "If I am to hold that the mother should have this boy as a proper person, then there is no doubt of her right. She is a proper person, eminently proper,"

and then rests his finding on the environment as between Lexington and Perryville.

According to the evidence, appellee's mother owns a large lot in Perryville, improved with a commodious residence, which, though not improved with modern conveniences, is sufficient to meet the necessary needs of the child. She also has personal property and some income, but, so far as the record discloses, appellee only works part time and for a moderate compensation. At the time of the hearing, a married daughter lived with Mrs. Harmon, but she and her husband had planned to move to another town, and appellee's wife, who was engaged in teaching elsewhere, was to take up permanent residence at the Harmon home at Perryville. The evidence shows the latter to be a woman of culture and refinement and a suitable person to have custody and control of a child. Appellant testified that she is able to and does and will continue to give all her time and attention to her home and her child. The evidence shows the school at Perryville to be one of high rank and standing; however, its advantages, to say the least, are not superior to the schools at Lexington. From the foregoing it will be seen that the court is dealing with a delicate as well as grave problem, and it would be even more so if orders respecting the custody of children were final.

Since appellee's work takes him away from his home for a great portion of the time, the decree of the chancellor virtually gives to the grandmother and stepmother the custody of the child in preference to his mother. Under the common law and our earlier cases prior to the enactment of section 2123, Kentucky Statutes, a superior right of the father to the custody and control of the child was recognized; but, under the provisions of that statute, no preference is given as between parents and courts in decreeing the custody of children shall be guided by their interests and welfare. It has become a rule of general application in this jurisdiction to award the custody of very young children to the mother if she is a suitable and proper person to be clothed with that duty and responsibility. Masterson v. Masterson, 46 S. W. 20, 20 Ky. Law Rep. 631; Meadors v. Meadors, 213 Ky. 397, 281 S. W. 180; Simmons v. Simmons, 194 Ky. 300, 238 S. W. 744; Stephens v.

Stephens, 194 Ky. 180, 238 S. W. 380; Hoffman v. Hoffman, 190 Ky. 13, 226 S. W. 119; Vallandingham v. Vallandingham, 232 Ky. 123, 22 S. W. (2d) 424; Thiesing v. Thiesing, 26 S. W. 718, 16 Ky. Law Rep. 115; Hartkemeier v. Hartkemeier, 248 Ky. 803, 59 S. W. (2d) 1014.

In the case of Colson v. Colson, 153 Ky. 68, 154 S. W. 380, 381, it is said:

"The mother may generally be trusted to protect the interests of her own child, even against improper conduct of her husband. On the other hand, the father may be often prejudiced by the statements of the stepmother, and, not being at home all the time, he cannot see that the child will always receive proper treatment."

See, also, Cummins v. Bird, 230 Ky. 296, 19 S. W. (2d) 959.

At the time of the hearing, Joseph Earl Harmon was five years of age, and all the cases and all authorities cited recognize that nothing can take the place of a good mother's love and devotion in the life of a child of tender years. Since the chancellor's finding concerning the absolute maternal devotion, the character and intelligence of the mother qualifying her as a proper person to have the custody of her child, finds sufficient support in the evidence, we must concur in his conclusion in that respect; however, we cannot concur in his conclusion that these considerations are so overborne by any superior school environment at Perryville that the custody of the child should be, for the present at least, denied the mother when all recent authorities dictate otherwise. In the circumstances, we are constrained to hold that the custody of the child for the present should be given appellant, subject to the right of the father to see or to have the boy with him during school holidays or vacations for and at such reasonable times as may be agreed upon between the parties or fixed by order of the court. Fortunately for the child, any decree respecting his custody is not final, but the court will retain jurisdiction and should have the case kept on the docket for such revision or modification of the decree as will conform to the child's future necessity or welfare. Middleton v. Middleton, 218 Ky. 398, 291 S. W. 359; Parks v. Parks, 209 Ky.

127, 272 S. W. 419; Walden v. Walden, 250 Ky. 379, 63 S. W. (2d) 290. When the child has reached an age of greater maturity and discretion, his wishes respecting the matter of custody should be regarded; however, that is a mere element to be taken into consideration, and will not be controlling, since the court must always look to the welfare of the child and not to any wishes or desires running contrary to it. Pope v. Pope, 161 Ky. 104, 170 S. W. 504; Varney v. Trout, 232 Ky. 513, 23 S. W. (2d) 944.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.