## Davis v. Davis.

Feb. 24, 1942.

Dodd & Dodd for appellant.

Greenberry Simmons for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The case involves the custody of a child. When Mrs. Pansy Davis was divorced from John T. Davis on January 31, 1939, the custody of their one-year-old child was awarded her, and the father was given the right to see and be with him at the home of his mother or of some mutual friend at least twice a week and more if mutually convenient, and "as the child matures to take the child to his own home under proper care and supervision." The judgment further provided that the mother should keep the child in Jefferson County "for at least a period of eleven months during each calendar year" where he would be available for the visits of his father. All these provisions of the judgment had been agreed to by the parties. Each had therein further agreed that neither should have the exclusive custody of the child as against the other and that each would "foster as much as possible the interest of said child in and to the other parent without prejudice to his own interests in and to said child, with the full right of either party at any time they cannot amicably agree upon the custody to present said matter to the chancellor for an equitable solution of this problem." Not long afterward the divorced wife married again and in April, 1939, she took the child to Mississippi without the father's knowledge or the consent of the court. About two months later the father moved the court for an order compelling the mother to return the child to Kentucky so that he might visit him. Nothing was done in the matter for nearly a year, apparently because process could not be served upon the mother until she returned to Kentucky in March, 1940. Upon the evidence presented on the motion, the master commissioner recommended that the child, who was then three years old, should remain with his mother, and the father should have the privilege of having him at the home of his paternal grandparents from noon each Saturday until five o'clock Sunday afternoon. Upon the hearing of exceptions to the report and recommendation

of the commissioner, the court, expressing the opinion that taking the child away from his mother and own home for approximately two days each week and overnight would break up his proper routine and habits, adjudged that the father could have his son one afternoon of each week, upon a day to be agreed upon or fixed by the court. The father appeals and contends that both under the original agreed judgment and on the proof on the motion for its revision, he is entitled to have his child for a greater period, submitting that the recommendation of the commissioner should have been accepted.

We quote the chancellor's opinion reciting the facts surrounding these parties as follows:

"Both parents of this child have an unusual matrimonial history. The plaintiff is 28 years of age. She married William Nunn and was divorced from him. She then married the defendant, Davis, and was divorced from him. Four months after this divorce she married Mr. Kahle, who has been previously married and divorced and has two living children by the first marriage. The defendant father is 31 years of age. He has been twice married and twice divorced but is at present single. This child's mother has married three times and been divorced twice. The child's father has been married twice and divorced twice. The child's stepfather, who has provided the home for this infant since it was a year old, has been married twice and divorced once and has the present obligation of supporting two children by his first marriage, the step-child involved in this action, and the record shows that this present wife is expecting another child.

"Fortunately for the child, his paternal grandparents, the Davises, are good people and prosperous farmers owning a large farm near Valley Station. They provide a home for their son, the father of this child, and want the child on the farm with his father. Further, fortunately for the child, his maternal grandparents, the Stovalls, are also good people and prosperous farmers owning a large farm near Valley Station. They have always provided the home for their daughter, the plaintiff, and she, her present husband and the child are now residing with them on their farm, which the present husband is now operating on shares with his in-laws.

Whether the custody be granted to either plaintiff or defendant, the child will live in the home with either his paternal or maternal grandparents, who are close neighbors and under somewhat similar environs.''

It is our view that where both parents are proper and suitable to have the custody of their children and are similarly situated each should be given the right of custody for as nearly equal a period as is practical and compatible with the welfare and convenience of the children. Harmon v. Harmon, 264 Ky. 315, 94 S. W. (2d) 670; Belknap v. Belknap, 265 Ky. 411, 96 S. W. (2d) 1012. We have little patience with the mother in this case, for in direct contempt of the court and in violation of her own agreement she secretly removed and kept the child out of the state for nearly a year. But for that it could be said the parents stand upon the plane of equality. For that she is not entitled to the same consideration she would be otherwise. But the disposition of a child of divorced parents does not rest upon justification for penalizing one of them unless it be that he or she was grievously to blame for the breaking up of the home. Cf. Meadors v. Meadors, 213 Ky. 397, 281 S. W. 180. It is axiomatic that the true guide for the court is the welfare of the child. The dominant thought is that a child is not a chattel to be disposed of according to the wishes of either or both of his parents, but is a human being and personality and is to be treated as such. This rule for disposition of a child is not only directed by the statute, Section 2123, but by the dictates of morality and of wisdom born of experience. To that end his custody may be awarded one parent or the other, or to his grandparents, or a stranger, according to circumstances.

As stated in the well considered opinion of Cummins v. Bird, 230 Ky. 296, 19 S. W. (2d) 959, 962, in which the maternal grandparents were held entitled to retain the custody of a twelve year old girl in opposition to the claims of her father who had been divorced from her deceased mother:

"Great responsibilities and duties must be met and performed by the courts, and none of them are more delicate or difficult than the determination of questions respecting the custody of children. The ties of blood and the claims of love often struggle for supremacy. When the welfare of the child and legal

rights are clear, the duty of the court is plain. But what may be best for the welfare of the child is often difficult to determine, involving, not only a consideration of present facts, but, in a large measure, a prophecy of future circumstances. The child's vital interest may be affected by a decision changing its status, thus admonishing a court that caution in such cases should govern its steps.''

Consistent with the general rule, the courts recognize that the well being of a young child requires that he be kept and controlled by his mother. Every worthy parent realizes that. As said by Chief Justice Robertson in Adams v. Adams, 1 Duv. 167, ''the character and destiny of the citizen are moulded by the domestic tutelage of the nursling.'' This is so even though it is also realized that a normal father is as devoted to his child as is a normal mother, although his love may not be manifested in the same tender way. His as well as the mother's affection and rights should be justly and sympathetically regarded. Herein lies one of the most difficult problems of a court. However, in the molding of the character and habits of a young life, it is as foolish to keep shifting him between his parents whose incompatibility has wrecked their attempt to establish a home—in the present instance several homes—as it would be to keep shifting a plastic compound from one mold to another and back again. We, therefore, concur in the conclusion of the chancellor that the welfare of this child required that he should not be taken away from his mother overnight each week.

At the time the judgment was rendered the child was three years old. A year has elapsed. As he has grown and is growing older, if the circumstances remain substantially the same, we are sure the chancellor, if he finds it proper, will modify his decree to enable the boy to spend more time with his father and paternal grandparents who, as stated above, are neighbors of his maternal grandparents. They are entitled to know the child and have the child know them. The good sense of the grandparents on both sides will doubtless contribute to a satisfactory solution of the problem, a liberal regard for the father's rights being exercised in carrying out the court's orders.

Judgment affirmed.