# Yeary v. Yeary et al.

October 26, 1948.

W. W. Reves for appellant.

Donald A. Ward and Vernon Faulkner for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellant, Paul Yeary, and his wife, appellee, Georgia Yeary, entered into a separation agreement on the 5th day of July, 1946, whereby appellee relinquished all rights or claims of any kind or nature against appellant or his estate arising or growing out of their marriage relationship. She likewise relinquished any claim for custody of their two children who at the time were five and two years of age respectively. In the agreement she admitted that she had abandoned his home, and had lived in adultery with another man, by whom she became pregnant, and from whom she contracted a venereal disease. In the contract appellant agreed to take custody of, support, maintain, and educate the children. On the following day appellant filed suit for divorce on the grounds that the defendant had abandoned him and was guilty of lewd and lascivious conduct. Mrs. Yeary made no defense to the action and judgment was entered on October 5, 1946, granting appellant a divorce, approving the separation agreement, and awarding the children to him. Appellant's parents lived in Indiana, and by agreement of the parties the children

were taken to the home of their maternal grandparents until such time as appellant could arrange a home for them. On January 1, 1947, appellant remarried, and on January 23, 1947, called on the maternal grandparents to deliver the children to him. This they refused to do, and on February 17, of that year, appellee, Georgia Yeary, filed motion to modify the judgment in respect to the custody of the children, and asked that their care, custody, and control be awarded to either her or to her parents. On February 26, 1947, after hearing testimony in the case, the Chancellor awarded the temporary custody of the children until the 1st day of September, 1947, to the maternal grandparents, appellees Frank and Ida Parsons. That order and the Chancellor's reasons for his decision appear in the following language:

"This cause is before the Court upon motion filed by the defendant to modify the judgment heretofore rendered in this action so as to award the custody of the two infant children of plaintiff and defendant, Peggy Jeannette Yeary and Wesley Paul Yeary, to her, or to her father and mother, Frank and Ida Parsons, grandparents of the children. The cause was heard in open court and the evidence taken in shorthand by a stenographer.

"The parties were married to each other on June 1, 1940. They had difficulties in 1936 (1946) and separated on March 23, 1946. They stayed separate and apart for a while and resumed their marital relations. On July 5, 1946, they came to the office of an attorney in Hazard and signed an agreement in contemplation of a divorce action and in this agreement the wife surrendered just about every claim she could have against the husband in the divorce action and agreed for the husband, the plaintiff, to have the custody of the two children. On the next day the husband instituted an action for divorce. The wife did not make any defense and judgment was rendered on October 5, 1946, granting the divorce and awarding the custody of the children to the plaintiff in accordance with the agreement. The plaintiff on the day the agreement was signed or the next day, telephoned to Frank Parsons and Ida Parsons, grandfather and grandmother of the children, parents of the defendant, both of whom were living in Harlan County, to come and get the children. This, they did, and the

children are yet with the grandparents. The plaintiff, the father, furnished some money and clothes for the children since they have been with their grandparents and in December, 1946, the plaintiff remarried and now lives at Rhoda, Virginia. In January, 1947, he came to Harlan County and attempted to get the children. The grandparents refused to let him have the children and he sued out a writ of habeas corpus which was heard and tried before the County Judge of Harlan County, who decided in favor of the grandparents. This was appealed to the Judge of the Harlan Circuit Court who decided in favor of the plaintiff, and the grandparents then prayed an appeal to the Court of Appeals, then this motion was filed and heard to modify the judgment.

"The Court finds from the record that the plaintiff is industrious, of good habits and good character, and the Court finds that the grandparents of the children are of good character. The plaintiff is a young man, who works in the mines at Rhoda, Virginia and seems to be interested in the upbringing and welfare of the children. On the other hand, the grandfather works in the mines in Harlan County, Kentucky, earns good wages and he and his wife are very much attached to the children and the children are very much attached to them. The Court realizes that it is the duty of the Court to look to the interests and welfare of the children, but in such a case as this, it is hard to say just what is best. The mother admits that she is not at present able to take care of the children because she works away from home, but she prefers that the children stay with her father and mother so she can help look after them and visit them when she desires. The Court is of the opinion that the home of the father is perhaps better, from the standpoint of playgrounds and schools than is the home of the grand-parents, but the Court does not know about the step-mother. She did not testify but the plaintiff, her hus-band, testified that she wanted the children and would be good to them. The Court does not question this state-ment, but it is not natural for her to take the same interest in the children as she would if they were of her own blood, and since the plaintiff and the step-mother have not been married but about two months, the Court feels that it is too early at present to commit the children to the care of the step-mother. The children have never

visited that home but have stayed a considerable portion of the time with their grandparents and even before the separation. The stepmother may have a child of her own and in that event she could not help but have a different feeling toward her own child from the children of the plaintiff and defendant. The Court feels that it is best, at present, to commit the custody of the children to the grandparents, subject to the right of the plaintiff to visit them or have them visit his home at any reasonable time.

"It is, therefore, ordered and adjudged by the Court that the judgment heretofore entered in this action be modified to this extent: That the custody of the two children, Peggy Jeannette Yeary and Wesley Paul Yeary, be given and awarded to the grandparents, Frank and Ida Parsons until the 1st day of September, 1947, at which time a further order will be made relating to their future custody, but the plaintiff will be given the privilege to visit them at any time he desires and will be permitted, at any reasonable time, upon securing permission and an order from this Court or the presiding judge so to do, to take them to his home for a visit.

"To this ruling the plaintiff objects and excepts and prays an appeal to the Court of Appeals which is granted. Entered 26th day of February, 1947."

On March 15, 1947, appellant moved the Court for temporary custody of the children. After a hearing on the motion, the Court entered an order that appellant might have the children visit his home from April 1st to May 1st 1947. On the 1st of April, after due notice to the maternal grandparents, he called at their home for the children, but was not permitted to take them with him. He then discovered that without notice to him, or motion on the part of any of the parties, and in vacation, the Court, on March 24, 1947, had entered an order rescinding the order of March 15. On July 12th, appellant filed a motion for temporary and permanent custody of the children; and on July 27th, appellant, and his wife, who, in the meantime, had been living in Virginia, moved back to Duane, in Perry County, where they leased and occupied a five room apartment on the second floor of a store building. On October 7, 1947, after hearing evidence, the Court entered an order awarding the perma-

nant custody of the children to the maternal grandparents which order reads:

"This cause is before the Court upon the motion of the plaintiff to modify a former order of this Court granting custody of the two children of plaintiff and defendant to the father and mother of the defendant, or rather to the mother of the defendant. The order heretofore entered provided that the custody of the children should remain in Mr. and Mrs. Parsons, father and mother of the defendant until the 1st day of September 1947 at which time a further order would be made. This is beyond the 1st day of September and the plaintiff has renewed his motion and produced additional evidence. Upon consideration of this motion the Court takes into consideration the evidence introduced upon the former hearings as well as the additional evidence introduced by both parties.

"The Court finds that the mother of the defendant is working away from home and has no place at present to support the children or care for them. The plaintiff has re-married and lives at Bulan or Duane, Ky., in an apartment upon the second floor. It seems that the children are at present with their grandparents and are happy, contented and well cared for and the older child, the little girl, is daily attending school in the neighborhood. The Court is impressed with the sincerity and desire of the plaintiff to have his children. This is but natural and it can be seen that he wants them under his guidance and control so that he may provide for them and rear them according to his ideas of life, and it is hard to determine in these cases what is best for a child, but if the custody of the children is taken from the father and mother of the defendant and given to the plaintiff they will have to live on the second floor of an apartment building in Bulan or Duane, Kentucky, and such a place where it would be dangerous for them to leave the building and go out upon the earth unless accompanied by some one who would look after them and care for them. The Court deems it best for the children to remain in a place where they may have action and liberty and not be confined within the walls of a building.

"It is, therefore, ordered and adjudged by the Court that the custody of the two children remain in Mr. and

Mrs. Parsons, father and mother of the defendant, until further orders of the Court, subject to the right of the plaintiff to visit them at any time and to see them at any time and to take them in his custody at any reasonable time for a visit. This is subject to be modified at any time when conditions change so that it may be regarded that for the interest and welfare of the children. To all of which the plaintiff objects and excepts and prays an appeal to the Court of Appeals which is granted.''

From this order appellant has perfected this appeal.

KRS 403.070 reads: ''Pending an application for divorce, or on final judgment, the court may make orders for the care, custody and maintenance of the minor children of the parties and any of their children of unsound mind. At any time afterward, upon the petition of either parent, the court may revise any of its orders as to the children, having principally in view in all such cases the interest and welfare of the children. * * *.''

This provision of the statutes has been construed in cases too numerous to cite but some of which may be found in the Notes and Annotations to the Kentucky Revised Statutes. All of the decisions are in harmony with the rule stated in Meadors v. Meadors, 213 Ky. 397, 281 S. W. 180, 182, wherein the Court said: ''It is the tendency of the courts to give the care of the children of a marriage when the parents are divorced to the spouse not in fault; and, if the children are of tender years, they are placed by the courts in the custody of the mother *whenever she is found worthy of the trust* (citations follow). Moreover, it is provided by section 2123, Ky. Stats. (now KRS 403.070), that the court in divorce proceedings may make an order for the care, custody, and maintenance of minor children, and at any time afterwards, on the application of either parent, may revise the same, having in all cases the welfare of the children principally in view.'' (Emphasis ours.)

The author of the opinion then quoted from Adams v. Adams, 1 Duv. 167, 62 Ky. 168, as follows: ''The welfare of infancy, involving that also of the Commonwealth, defines the sphere of the parental rights and duties, and these preferred rights and duties are correlative. The character and destiny of the citizen are moulded by the domestic tutelage of the nursling. And,

therefore, whenever the parents are separated by divorce, although, prima facie, the abstract right and duty of the father are superior to those of the mother, yet the court dissolving the union should confide the care and custody of their infant child to the parent most trustworthy and capable; *and if neither of them shall be worthy of such delicate and eventful trust,* the interest of the child and of the public may authorize a transfer of the custody to a stranger.'' (Emphasis ours.)

We apprehend that no one would have the temerity to suggest, much less argue, that the mother of these children possesses the moral requisites to demand, or be awarded, their custody. That being true, under the rule firmly established in this jurisdiction, the father of the children if suitable to the trust should have the preference over the grandparents or any other person; provided, the award of custody to the father is consistent with the best interests and welfare of the children.

Appellant is a coal miner earning approximately $330 per month. His character is beyond reproach, and he has manifested his devotion to his children. He is in his early thirties, and his wife in her late twenties. Both testified in the case; and expressed a strong desire to assume the obligation attached to the raising and nurturing of the children in question. Cases of this kind invariably are fought to the bitter end, yet no word of criticism has been uttered against the character of either appellant or his present wife. The Chancellor, in denying the custody to the father admitted all of these facts in his opinions which we have quoted at length above. It seems that his principal reason for refusing appellant's request for the custody of the children is that he lives in an apartment on the second floor of a store building. He also added in his order granting temporary custody to the grandparents that appellant and his present wife had only been married two months, and that on that account it was too early to commit the children to the latter's care. If children were taken from all parents who live in apartments, a large percentage of homes would be broken up and the children of such homes would, in many cases, become public charges. Such argument does not constitute a reason for depriving the children of the care and devotion of a parent who otherwise is suitable and willing to discharge his trust. In

the order awarding final custody to the maternal grandparents, the Chancellor made no mention of the step-mother who testified in that hearing, and who undoubtedly created such a favorable impression as to eliminate from the Chancellor's mind the first objection interposed concerning her. It is true that appellant's second wife has never raised a family but this fact does not militate against her suitability for doing so, and certainly there is nothing in the record to indicate that she is incapable of performing such duties as she will assume in this respect. On the other hand, the maternal grandparents have not shown themselves to be experts in this field of endeavor, if they are to be judged by the product (their own child) whose reprehensible and disgraceful conduct was the sole cause of this unfortunate controversy. In short, the judgment we are asked to reverse wrests the custody of his children from a father who has proven himself to be morally, mentally, physically, and financially capable of the trust. His sincerity cannot be doubted, and so far as this record discloses his present wife is his peer in every particular. If we had nothing to review but the chancellor's written opinions we would not hesitate to reverse the judgment, but the record itself is more convincing than the opinions. The judgment is reversed with directions that it be set aside, and another be entered awarding to appellant the permanent custody of his children.