## Vanover v. Hunley et al.

February 22, 1949.

Leonard S. Stephens for appellant.

J. E. Stephens for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

In September 1945 appellant, plaintiff, obtained a divorce from his wife. At the time of judgment the girl child, Georgia Mae, was about three and one-half years old, and in the divorce proceedings her custody was awarded to the maternal grandparents, defendants in the instant proceeding, which was begun in September 1947. Appellant in his petition alleged that at the time of the judgment it was agreed "between the parents that the Court should award the child's custody temporarily to the grandparents."

The judgment, exhibited here, shows that by agreement the girl's custody was awarded to the grandparents "until further orders of the court" with rights of visitation by the father. Alleging that he was single after the divorce, but that now his status has changed; he has remarried, and was regularly employed. He had no other children, and he said he was a proper and fit person to have the girl's custody. He emphasizes his right, superior to that of the grandparents, and expresses a desire to have the privilege of rearing the girl. Plaintiff did not allege that the grandparents were not proper persons to have the girl's custody.

In answer the grandparents, after general denial, asserted their legal custody, apparently relying on the force of the judgment. They say they have well cared for the child, sending her to school and Sunday School, and have become greatly attached to her. They do not allege that the father is not a proper person to have custody, but allege that they are proper persons "to raise her right and make her a useful woman." A reply in denial joined issue.

This is a rather unusual case, as neither party charges the other with an act or omission which would constitute a reflection on any of the parties, it being gathered from the trend of the proof and pleadings that each was to some extent relying on legal right of custody; the one on statutory right, the other on the force of the judgment.

Proof was taken by deposition, and after reading the evidence we can agree with the chancellor who found the case to be "a relatively close one," due somewhat to the meagerness of testimony, lacking in details which would serve to give the courts a better insight to the situations of parties at the time. However, we may accept appellant's version as manifested in a most comprehensive brief filed by counsel in his behalf.

Appellant since his divorce has remarried; the time not stated. He lives in a two room apartment in Muncie, Indiana; he says that if awarded custody he will procure a larger one. He was 37 years of age at the time of his testimony and then employed in a glass factory, his wages being $1.10 per hour. He does not show ownership

of any property; he naturally says he is anxious to have the custody of the child. His chief and only grievance against the grandparents was that they would not permit him to come into their home to visit his daughter; that they teach the child that she is not a Vanover but a Hunley. He says the child told him when she started to school she was to write her name "Hunley" and not "Vanover." He testified that on one occasion he visited the home and was not permitted to enter, and the grandparents sent the child into the house. This same fact was corroborated by two other witnesses who say that the only time he could see the child was when she slipped out of church when there with her grandmother. There was also testimony that the child had at times expressed a desire to see and be with her father. The foregoing was in substance the testimony for appellant.

Mrs. Hunley (47 years of age) said that she had had custody of Georgia Mae for more than three years. The child was born in her home; she sent the child regularly to school and Sunday School and took her to church at times. She said she had given her a good home, with "plenty to eat and plenty to wear." She and her husband own their home, which was in good condition. She expressed a desire to keep the girl and raise her properly. She denied that she had ever refused to let the father visit the child, but did not deny the charge that she was insisting on the child's use of the name "Hunley," or some of the charges made by the father which do not bear on the question as to the best welfare of the infant daughter.

Other neighbors and visitors to the Hunley home testified that the child was well cared for in the Hunley home; that the grandparents were good, moral people, Mrs. Hunley being a very religious woman, and that they cared for the child in a proper manner; some of the witnesses saying that the child's welfare would be best subserved in the Hunley home.

There was feeble effort to show that appellant was given to drink, but it developed that the testimony related to times prior to the divorce from the first wife. Also it was claimed that appellant had been in default in that part of the judgment which required him to pay $20 per month for the girl's support. This boiled down to

the fact that he had at one time been in default of that part of the judgment and rule of court was necessary to enforce payment.

A written memorandum by the chancellor justifies us in saying that he gave careful consideration to the meager proof and the applicable law, which led him to say that under the proof adduced he was compelled to conclude that, at this time at least, the interests of the child would best be served while in the custody of the grandparents. After quoting quite a number of our (numerous) opinions relating to custody of infants, the chancellor very aptly said:

"In the instant case the father does not show the particular environment nor conditions under which the child would live should he be granted custody; there should be more substantial evidence adduced before a court should take the child from its grandparents, whom he knows to be honorable and trustworthy citizens, and permit the child to be taken to a foreign jurisdiction."

The court was somewhat critical of the grandmother's action in refusing to allow appellant to come to the home, but in his judgment made it clear that visitation should be allowed at reasonable times, and if the parties could not agree as to times, he would settle that matter. We may add that the grandparents should not do anything which would serve to cause the child to dislike her father.

Appellant in brief has cited numerous cases which enunciate the rule that the right of the parent to an infant's custody is superior to that of strangers, and that before that right will be denied the scales must be balanced against them. Johnson v. Cook, 274 Ky. 841, 120 S.W.2d 675; Setser v. Caldwell, 300 Ky. 356, 188 S.W.2d 451; Stapleton v. Poynter, 111 Ky. 264, 62 S.W. 730, 53 L.R.A. 784, 98 Am. St. Rep. 411; Yeary v. Yeary, 308 Ky. 353, 214 S. W. 2d 587, are not in point here.

The chancellor referred to the cases of Bard v. Bard, 295 Ky. 254, 173 S.W.2d 569; Staggs v. Sparks, 286 Ky. 398, 150 S.W.2d 690, both of which lay down the rule so frequently announced and followed by this court involving the custody of an infant, and the future welfare of the child, well stated in the Staggs-Sparks case:

"In determining whose custody of infant child is best for child's welfare, affection between child and persons having custody thereof, opportunities of disputants to furnish and provide child with necessities of life and facilities for obtaining education, both literary and religious, associations tending to child's proper development after reaching maturity, including association with playmates of like age, and other considerations tending to establish better environments, whereby child's better nature may be cultivated and developed into character of usefulness and benefit to community, must be considered."

The foregoing rule was applied in other cases, notably Ridgeway v. Walters, 281 Ky. 140, 133 S.W.2d 748, and other cases of like import cited therein.

When we read the proof we were forced to conclude that the father had not taken the trouble to produce proof which would have justified the chancellor, or this court, in reaching the conclusion that at this time the girl's welfare would be best or better served by awarding him her custody. A careful survey of the record does not disclose any ground or reason why we should disturb the chancellor's conclusion, hence the judgment is affirmed.

Judgment affirmed.