## Lawson v. Lawson.

May 23, 1939.

TRIMBLE & TRIMBLE for appellant.

WHITE & CLARK and SCHULTZ & FLEMING for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Mrs. Majorie B. Lawson sued Richard B. Lawson for divorce, asking to be awarded custody of their infant son, Brooke Lawson, alimony and maintenance.

Upon the chancellor's hearing of the cause, on April 6, 1935, he granted the plaintiff an absolute divorce, to-

gether with the custody and control of the infant, Brooke Lawson, then about five years of age, and $30 a month, payable to her, for the child's care and maintenance.

Some three years after the court's entering of its, judgment, in June 1938, the divorce action was reinstated on the docket, when the verified motion of the defendant, here appellant, was filed, asking the court's modification of its judgment entered April 6, 1935, granting the care and custody of the infant, Brooke Lawson, to his mother and that it award the care and custody of the infant to his father, the appellant, during the summer and subsequent school vacations and the Christmas holidays and that during such times the appellant be permitted to have his son visit him in his home, made with his parents in the upper part of Virginia, some fifty miles distant from Washington.

The court, after hearing proof of the parties introduced in support of and against the granting of the requested modification of the judgment, the argument of counsel, and duly considering same, entered its judgment overruling appellant's motion, "but without prejudice to any future similar motion that may be made in the case."

This appeal is prosecuted from this last entered judgment, asking that it be reversed and that a modified judgment be entered as prayed for in the lower court.

In June, 1938, at the time of the court's hearing of the appellant's motion for a modification of the judgment and its overruling of same, Brooke Lawson was about seven years of age and is now, when we are asked to review the chancellor's order complained of, about eight years of age.

As disclosed by the record, the background of this present unhappy situation of dispute and discord between the father and mother, regarding the custody of their little son, Brooke, is that the parties were married December 21, 1928, when the appellant had profitable employment; that they lived happily together for a year or so, or until the lean years came, when, under the pinch of hard times, it is argued, there came a "rift in the lute" of their married happiness; that following this, they lived at the Barker home in Hopkinsville and also, the appellant having procured a position as teacher near his home, at the Lawson home in Upperville, Va. It is further shown by the record that they resided there

until the summer of 1933, when appellee came with her baby boy to Hopkinsville, where she has since lived. Some months after her return with her baby to Hopkinsville, she filed her suit for divorce, as stated supra, against her husband, wherein she was granted a divorce and awarded custody of the infant child, Brooke Lawson.

Upon the hearing of the appellant's motion for the modification of that judgment, the appellant was the only witness who testified in support of his motion that he be granted permission, as stated, to have his son visit him during his vacation periods.

He testified that the boy was a bright, robust little fellow, to whom he was devoted and who was devoted to him and that he, as his father, should be permitted to have a larger share in the boy's companionship, care and rearing; that he should be allowed to visit him at the home of his parents in Virginia during his vacation periods, as stated supra, where he would be given, in a home of culture, every comfort, care and attention which his aging parents and sister could there, with loving devotion, give him; that he would there, at his country home, which was only a short distance from Washington, find proper playmates, have a pony and be given every attention and care that would contribute to his welfare.

He testified further, in answer to the testimony of the mother and her witnesses that Brooke was not a strong or robust boy, but a boy of a highly nervous temperament and at times moody, and who upon frequent occasions had convulsions, requiring the understanding service and treatment of their family physician, Dr. Thomas in Hopkinsville, to relieve him, that he had among his friends two of the most outstanding child specialists and diagnosticians in Washington and that, if his son was subject to recurrent convulsions or was in poor health, he would be given examination and treatment by them for his cure.

Both plaintiff and defendant criticise and have slight regard for the weight of the evidence introduced by each to support their respective claims and appellee contends that appellant, in asking a modification of the judgment, assumed the burden of showing that by right, for the reasons set out, it should be modified and that he had utterly failed to maintain that burden.

Counsel for appellant, on the other hand, we deem very properly argues that it was not a question of maintaining the burden of proof but of making such showing upon the hearing as persuaded the chancellor that the boy's welfare would be best served by making the modification of the judgment asked.

In the case of Davis v. Davis, 140 Ky. 526, 131 S. W. 266, 267, the court said:

"It is first insisted that the chancellor was without power to modify the original judgment, as he had not reserved in that judgment the right to do so. In this connection it is urged that the only proper procedure is that provided for under section 2123, Kentucky Statutes * * * which is as follows:

" 'Pending an application for divorce, or on final judgment, the court may make orders for the care, custody and maintenance of the minor children of the parties, or children of unsound mind, or any of them, at any time afterward, upon the petition of either parent, revise and alter the same, having in all such cases of care and custody the interest and welfare of the children principally in view. * * *'

"The question here presented was before this court in the case of Shallcross v. Shallcross, 135 Ky. 418, 122 S. W. 223. It was there held that the exercise of the power possessed by a court of equity with respect to the custody of an infant whose parents had been divorced is not dependent upon action by either of the divorced parents, or upon a reservation in the judgment of authority subsequently to change or modify the judgment; but the court may, upon its own motion, modify the judgment. That being true, the court has the power, after a term, to modify or vacate the judgment in such cases, it matters not whether the exercise of the power is invoked by petition of one of the parents, or by motion and rule to show cause why the judgment should not be complied with."

See further to like effect 17 Am. Jur., Section 683, page 517, where it is said:

"Where the court is called upon after the divorce of the parents to determine who shall have the custody and care of the children of the marriage, it should, as in other cases involving the custody of minor

children, take into consideration all the circumstances of each particular case and dispose of the children in such manner as may appear best calculated to secure for them proper care and attention as well as consideration. The dominant thought is that children are not chattels, but intelligent and moral beings, and that, as such, their welfare and their happiness are of first consideration.''

The appellant relies upon the case of Grow v. Grow, 270 Ky. 571, 110 S. W. (2d) 275, 276, as supporting his application for a modification of the judgment. There the court said:

"At the time the judgment was rendered, the child was not quite five years old. She is now a little over six. The mother is 22 years old. There is some evidence tending to show, prima facie, that the mother's conduct on several occasions was not according to the proprieties as judged by a rigorous code; but, with the explanations and the affirmative testimony, the evidence as a whole does not show the mother to be an unfit or improper person, from the standpoint of morality, to have the care and custody of her child. * * *

"The father, of course, is entitled, as a matter of right, to visit his child, at reasonable times, without interference and under such conditions that it can be said that she is his exclusively for the time being. We think, also, that he should be permitted to have her with him periodically for a substantial time at his parents' home, or elsewhere, where the situation is not inimical to her welfare.''

However, the facts in the Grow case are that both parents lived nearby in the same county and state and that there was no distant removal asked of the child from the mother. Also, in the instant case, according to the evidence of the mother and her witnesses, the child is not in robust health, is highly nervous and is subject to convulsions and the mother is apprehensive that if taken to the husband's distant home, where he would be for a time, at least, an alien in a new land, it would be hurtful to him.

Appellant contends that this is a pretext, made to influence the court in awarding the custody of the child to her, thus defeating the granting of appellant's motion.

However this may be, we do not feel justified in disturbing the finding of the chancellor who is familiar with the whole situation, knows Brooke Lawson, the doctors who treat him, the mother and her parents and the care and attention given the child. He has concluded from such knowledge and the evidence before him that the boy's welfare, which is the first and chief consideration, will be best served by leaving him in the care of his mother for yet awhile, but, as stated supra, the chancellor makes such ruling without prejudice to the appellant's renewing his motion for the partial custody and care of his son and the right to have him for brief periods with him in his home in Virginia. It would appear proper that at some future time, when the boy is older, considering the father's equal right to the companionship and custody of the child, he should be allowed to have the boy for certain periods, if it should be made to appear that he could give him the proper care and environment.

After a careful consideration of the matter here presented, we feel that we are best serving the interest and welfare of the boy in not disturbing the finding of the chancellor, who is best informed as to his condition and who is best calculated to work out to his best advantage.

Judgment affirmed.