## Cole v. Cole.

Feb. 2, 1945.

Will H. Layne and Abner May for appellant.

Joe P. Tackett for appellee.

OPINION OF THE COURT BY PERRY, COMMISSIONER—Reversing.

This case presents for our determination the question as to who, as between the father and mother has the right to the care and custody of their two infant children, Billie Cole, two years old, and Ruth Anne Cole, one year of age.

The appellant, Johnnie Cole, and the appellee, Margaret Goble Cole, were married in December, 1939, and lived together as husband and wife until in June, 1943, during which time the two children whose custody is here involved were born to them.

On July 8, 1943, the appellant, Johnnie Cole, brought this suit in the Floyd circuit court against his wife, seeking an absolute divorce from her, based on the ground of such lewd and lascivious behavior on her part as proved her to be unchaste (KRS 403.020 (4) (c), sec 2117, subd. 3, KS) and further, having charged that his wife was unchaste, he alleged that she was not a proper and fit person to have the care and custody of their infant children, and therefore asked that he be adjudged their care and custody.

Summons was issued and served on the appellee and notice given her that the depositions of various and sundry witnesses would be taken on behalf of the plaintiff at the times and the place stated in the notice, and pursuant thereto proof was accordingly taken. Six witnesses gave their testimony in the form of affidavits, tending to establish plaintiff's charge of unchastity made against his wife.

The defendant neither in person nor by attorney appeared at the taking of these affidavits, nor did she at any time file any pleadings, denying the charges made against her or take any proof tending to contradict the

charge made that she was unchaste and an unfit person to have the custody of the children confided to her.

The following evidence was given by plaintiff's witnesses:

Joseph D. Harkins, police judge of Prestonsburg, testified that he was acquainted with both the plaintiff and the defendant, who are residents of Prestonsburg. Further he stated that in the latter part of June, Buck Goble, the father of the defendant, came to his office and swore out a warrant of arrest for her, on the grounds of deserting her two infant children, Ruth Anne and Billie Cole, and stated that his daughter, the appellee, had joined a carnival (when showing in Prestonsburg) and that she had gone with it when it moved away to another town.

Also E. P. Hill, the duly acting county judge at Prestonsburg, Floyd county, stated that on August 14, 1943, the father of the defendant, Buck Goble, had also come before him and procured a warrant for the arrest of his daughter for the desertion of her two infant children.

The plaintiff's witness, Frank Caudill, testified that he was acquainted with both plaintiff and defendant and that they were both residents of Prestonsburg; that about the first of July, 1943, when a street carnival was showing in Prestonsburg, he saw the defendant at the carnival show and that she was conducting herself in a very lewd manner and kissing a man by the name of Neely, a soldier home on furlough; that on the same night he saw the appellee with two other men and that they were all drinking together, that he thought LeMarr was the name of one of the men. Further, he testified that appellee had begged him not to tell on her "for kissing" Neely and that she afterwards went off with the carnival.

C. H. Smith and other of plaintiff's witnesses stated that they were acquainted with plaintiff and defendant and their reputations in the community of Prestonsburg where they resided and that the character and reputation of the plaintiff for honesty and morality was good, while that of his wife, for morality and virtue, was bad; that plaintiff was very anxious to keep his two children together while he was in the army, while his wife was "running wild" and acting as if she were an unmarried woman.

Upon submission of the cause upon plaintiff's pleadings and proof, showing him to be a man, upright and of excellent character, the court adjudged him an absolute divorce from the defendant, and further adjudged, by reason of such showing made as to his good character, that the plaintiff was a proper person to have the care and custody of their infant children and accordingly did properly so award them to him, with the right given the defendant to visit them at all reasonable times and that the case be stricken from the docket 'and the parties dismissed hence.

At the following January 1944, term of the court, defendant filed written motion seeking to have the court set aside that part of the judgment rendered at its prior September term awarding the custody of their two infant children to the plaintiff and render a supplemental judgment awarding their care and custody to the defendant, for the reasons stated in the motion that the same had been procured by fraud practiced by the husband, in that he had promised if she would not defend his suit for divorce, he would let the judgment award her the custody of their children and that she, relying upon his keeping his agreement, did not appear or make defense to the suit and did not know that he had sought or been adjudged the custody and control of the children until after said judgment had been entered. Further she averred in the motion that she was not guilty of the lewd conduct charged against her but was a fit and proper person to have the custody of the said children. However, while such were the averments of her motion, no proof was taken or offered in their support, tending to show that her character had changed since the rendition of the earlier or September judgment, holding her to be unchaste and therefore an unfit person to have the custody of their children of tender age.

Upon the cause being submitted on defendant's motion, asking a modification of the judgment as stated, the court entered a supplemental judgment sustaining the motion and awarding her the care and custody of their infant children.

From this modified judgment plaintiff appeals.

In Duncan v. Burnett, 292 Ky. 269, 166 S. W. 2d 419, 421, this court said: "We have uniformly held that the court granting the divorce retains jurisdiction to revise orders relative to the care and custody of chil-

dren. Parks v. Parks, 209 Ky. 127, 272 S. W. 419; Napier v. Napier, 286 Ky. 452, 151 S. W. 2d 72; Boyers v. Boyers, 283 Ky. 1, 140 S. W. 2d 646; Lawson v. Lawson, 278 Ky. 602, 129 S. W. 2d 135; Keith v. Keith, 270 Ky. 655, 110 S. W. 2d 424; Harmon v. Harmon, 264 Ky. 315, 94 S. W. 2d 670. In Keith v. Keith (270 Ky. 655, 110 S. W. 2d [424], 427), it was said: 'It is the well-settled rule that there can be no final judgment as to infant children and, under section 2123 of our Statutes (KRS 403.070), the chancellor should retain the case on the docket for future consideration; but, if he fails to do so, either parent may, by notice to the other, have the case redocketed and is entitled to a reconsideration of the case for the purpose of determining any changed condition relating to the children or changed financial conditions of the parents,' and in Harmon v. Harmon (264 Ky. 315, 94 S. W. 2d [670] 673), the court said: 'Fortunately for the child, any decree respecting his custody is not final, but the court will retain jurisdiction and should have the case kept on the docket for such revision or modification of the decree as will conform to the child's future necessity or welfare.' ''

Also it is said in 17 Am. Jur. sec 684, p. 518, as stating both the reason for and the rule as to the right of the court to modify its earlier judgment awarding the custody of a child of divorced parents to the one or the other, that: "A decree made at the time of the divorce cannot anticipate the changes which may occur in the condition of the parents or in their habits, character, and fitness to have the custody and care of the children. The parent having the custody of the children may marry, may become poor and unable properly to maintain and educate them, or may become vicious and morally unfit to have the control of children. These changes and other sufficient causes may make it necessary for the good of the children that their custody be changed. Hence, most of the statutes on the subject expressly authorize the court to vary or modify its decree in this respect. Moreover, a delinquent parent may in the course of time become entirely fit to have and retain the custody of his or her child. So, it has been held that the presumption of unfitness on the part of a father for the custody of his child, raised by refusal of the court to award it to him upon granting a decree of divorce against him, is overcome by evidence of an exemplary life for many months after the passing of the decree. Ac-

cordingly, it has been held that orders in divorce proceedings as to the custody of minor children are not final in the sense that they are not subject to change, but are, in their nature, interlocutory and subject to modification at any future time during the lives of the parents and the minority of the children, *upon good cause shown.* A decree fixing the custody of a child is, however, *final on the conditions then existing and should not be changed afterward unless on altered conditions since the decree or on material facts existing at the time of the decree but unknown to the court,* and then only for the welfare of the child.'' (Italics ours.)

Here defendant's motion to be awarded the custody of the children did not, in support of same, introduce any *proof* showing a later changed condition, either that the plantiff had ceased to be a fit person to have the custody of his children or that the defendant was no longer an unchaste and unfit person to be entrusted with the tutelage and nurture of these children. Only in her motion was it alleged that she was not a lewd person or an unfit person to have the custody of her minor children.

Defendant's right to a modification of the earlier judgment being dependent upon and based, as stated above, on proof showing that her condition has changed and that she is no longer an unchaste woman, as found by the prior judgment, in the absence of any proof offered by her tending to show a changed condition and that she has now become a chaste woman and, due to such change, is now a fit person to be entrusted with the care and custody of her children of tender age, we are led to conclude that the chancellor erred in modifying his earlier judgment, which properly awarded the custody of the children to their father, who was conclusively shown by the proof to be a man of excellent character, honest and upright, and therefore in all respects a fit person to have their custody awarded him, by now awarding their care and custody to their mother.

Even though the general rule is that the custody of children of tender age will be given to the mother, such award is governed by the controlling and paramount consideration that such award is for the best interest and welfare of the children. As said in section 683, p. 517, 17 Am. Jur.: ''Where the court is called upon after the divorce of the parents to determine who shall

have the custody and care of the children of the marriage, it should, as in other cases involving the custody of minor children, take into consideration all the circumstances of each particular case and dispose of the children in such manner as may appear best calculated to secure for them proper care and attention as well as a virtuous education. In other words, the welfare of the child is the chief consideration."

Here the chancellor, upon very ample and sufficient proof heard upon the first trial of the cause, found that the husband was of excellent character, while the mother was shown by the evidence to be unchaste and therefore not a fit person to have custody of the children.

Inasmuch as there was no proof offered that the mother's character has changed and that since the rendition of the prior judgment she has become and is now a moral and fit person to nurture and rear her children, we are constrained to conclude that the court erred in modifying its prior judgment, awarding the custody and control of the children to their father, by awarding it to the mother, and for such reason its supplemental judgment is reversed and the court's earlier award of the custody of the children to the father revived and reinstated.

Judgment reversed.