**N.B., Appellant,**

v.

**C.H., Appellee.**

**No. 2010–CA–002257–ME.**

Court of Appeals of Kentucky.

Sept. 16, 2011.

Lisa J. Oeltgen, Ann D'Ambruoso, Lexington, KY, for appellant.

Robyn Smith, Louisville, KY, for appellee.

Before ACREE and WINE, Judges; LAMBERT,[1] Senior Judge.

### OPINION

ACREE, Judge:

N.B. (Mother) appeals the November 22, 2010 order of the Fayette Family Court addressing various issues regarding a minor child, M.H. (Daughter), born of Mother's marriage to C.H. (Father). We find no error in the family court's refusal to order Mother and Daughter to undergo additional reconciliation counseling, and we therefore affirm that portion of the order. The family court did err, however, in permitting Father to unilaterally decide, contrary to the order of joint custody and without the joint custodian's agreement, to relocate Daughter to Texas without conducting a hearing to determine whether relocation was in Daughter's best interests. We therefore vacate the portion of the order addressing those matters and remand the case for additional proceedings.

### Facts and procedure

Mother and Father married in 1989 and had three children: the oldest is an emancipated child; another child who was near the age of emancipation immediately before this appeal[2]; and Daughter, who was then fifteen years of age. The parties separated in February 2002, and a decree of dissolution was entered in August of that year. Sometime prior to the separation, Mother began experiencing depression.

She apparently believed it was in the best interests of her children that they stay primarily with Father during this time, though Mother remained active in their lives. This arrangement was reflected in the settlement agreement, incorporated by the divorce decree, which provided that the parties would be joint custodians of the children, that Father would be the primary residential parent, and that Mother would enjoy liberal timesharing.

Mother moved out of the marital home, but continued to reside in Louisville. Then, approximately four months after the divorce, Mother moved to California, where she found employment. Understandably, Mother was unable to maintain the same liberal timesharing schedule while she was in California, but she did keep in contact with the children during this time. She and Father strenuously disagree about the frequency and nature of the contact.

Mother moved back to Kentucky in October 2003 and subsequently remarried.[3]

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. This child is now eighteen years of age, but this appeal was filed prior to his eighteenth birthday; he was therefore not emancipated at any time relevant to the issues now before us.

3. This is perhaps the most expedient place to note certain facts about Mother's new husband, D.B. (Step–Father), which were the source of much controversy between the parties and their children. Step–Father was born biologically male, but with ambiguous genitalia. Shortly after his birth and long before a child's sex could be determined genetically, Step–Father's parents made a decision to resolve the ambiguity surgically. He was raised female, and corrective surgery was not undertaken until several decades had passed. Father has taken issue with Step–Father's gender or sexual identity at various times, even going so far as to hire a private investigator to look into the matter. It was repeatedly, and often inappropriately, made an issue at various times before the family court, and the parties continued the argument in their appellate briefs.

She attempted to resume more regular visitation with the children, but was met with resistance from Father and Daughter. After much legal wrangling, the family court ordered that the entire family— Mother and Step–Father, Father and his second wife C.B. (Step–Mother), and all the children—attend counseling with Dr. Marc Plavin.

Despite counseling, Mother and Father continued to wage war over the children, appearing frequently in the family court for resolution of a variety of disagreements. These included disagreements over child support payments, child care arrangements, holiday schedules, the children's eating habits and extracurricular activities, and an allegation that Step–Mother required that the children address her as "Mom" or "Mum." During this time, the parties continued to share joint custody, with Father designated the primary residential parent and Mother enjoying timesharing.

Over time, Daughter began to feel alienated from Mother, and in late 2009, Daughter expressed her desire to stop spending time with her mother. Mother did not force Daughter to comply with the timesharing order, but did file a motion on September 21, 2009, requesting that the family court order the parties to undergo further counseling to resolve their issues. Initially, Father did not object to additional counseling. The parties ultimately agreed to seek the advice of Dr. David L. Feinberg regarding the appropriate course of counseling for Daughter.

Dr. Feinberg recommended that Daughter and Mother undergo reconciliation counseling, and to that end Mother requested that the family court enter a counseling order. Father reversed his position and opposed the motion.

Before a hearing could be conducted on Mother's motion for counseling, Father filed a document entitled "Notice of intent to relocate [Daughter]'s residence." In this filing, Father represented that he intended to move to Texas and to take Daughter with him. He filed no motion for permission to relocate, or to modify custody or timesharing.

A hearing followed. The purported purpose of the hearing was to address Mother's motion for counseling and a subsequent motion for attorney's fees, but Mother's attorney took the opportunity to voice Mother's objection to Father's proposed relocation of Daughter.

At this point the issue of reconciliation counseling and the potential move to Texas became intertwined, and neither the parties nor the court appeared able to separate them. Following Mother's objection to relocation, Father's attorney represented that no move was imminent, and indeed that it might not take place at all. He offered to postpone any decision about moving to Texas until the counseling issue had been resolved.

Dr. Feinberg then testified. He admitted that it was unlikely that reconciliation counseling would reach the desired level of success. Nevertheless, he recommended that Daughter and Mother begin reconciliation counseling as soon as possible be-

We are not concerned, however, with discerning the "truth" about Step–Father's genetic or legal sex for purposes of this opinion; that is not an issue before us. All that is important on this topic is that the parties have disagreed about what is true about Step–Father, resulting in confusion for the parties' children. The confusion and disagreements have affected Daughter in particular and contributed in large part to her distrust of her mother. Mindful that these matters are relevant on review only to that extent, we return to the facts of the case.

cause if the process were never begun the likelihood of reconciliation was effectively zero. Despite expressing some reluctance to follow the doctor's recommendation, the family court sustained Mother's motion and ordered the reconciliation counseling. Notwithstanding Father's representations that he would postpone relocating to Texas with Daughter until the counseling issue was resolved, Mother filed a written objection to Father's relocation proposal.

Mother and Daughter attended one counseling session with family therapist Marcia Malone Bell. It was unsuccessful, and Father refused to force Daughter to attend another session. Mother filed a motion to compel compliance with the counseling order.

The family court heard evidence on the motion. Bell testified in an evidentiary hearing and cautioned against "pushing" Daughter into counseling she did not want. The family court also conducted two *in camera* interviews of Daughter in the summer of 2010. Daughter expressed in both sessions a distrust of her mother, founded on a belief that Mother routinely lied about various matters, including that she loved Daughter. The family court did not immediately rule on Mother's motion to enforce its counseling order, but, as will be seen, eventually denied it. Counseling was effectively discontinued.

Mother subsequently obtained information which caused her to believe Father, in fact, had already moved to Texas, taking Daughter with him. She filed a document requesting that the family court order Father to immediately return Daughter to Kentucky and to order Father's compliance with the order of joint custody[4] and the original order of reconciliation counseling. Father's response was that he and

Daughter had established dual residences, one in Texas and one in Kentucky, and that his continued contacts with Kentucky were insufficient to trigger the requirements of *Pennington v. Marcum*, 266 S.W.3d 759 (Ky.2008) for modifying the original custody and timesharing order. He also represented that the joint custody situation had been unworkable for some time and indicated that he had assumed all the decision-making responsibilities regarding Daughter.

Following a hearing, the family court entered an order on Mother's latest motion. The judge acknowledged that Daughter resided in Texas with Father, but denied Mother's motion for the immediate return of Daughter to Kentucky, denied her motion to compel Father's compliance with the order of joint custody, and denied her request for continued reconciliation counseling. This appeal followed.

### Analysis

The briefs raise several issues. We will address them as follows. First, we will address the preliminary question whether the order from which Mother takes her appeal is final and appealable. Next, we will address Mother's claim that the family court abused its discretion when it refused to compel Daughter to attend counseling. Finally, we will address the issues of Daughter's relocation. Within that final section, we will: (1) address the inapplicability to this case of the Kentucky Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), KRS 403.800 *et seq.* (2) discuss *Pennington*'s substantive points of law applicable here; (3) describe *Pennington*'s applicable procedural points of law; and (4) identify, by applying *Pen-*

---

4. The joint custody order has remained unchanged since the settlement agreement was

entered on August 13, 2002.

*nington,* which parent in this case bears the burden of proof in the relocation dispute.

### *The November 22, 2011 order is properly the subject of this Court's review*

 We will first dispose of Father's contention that the order is not final and appealable, and therefore cannot be reviewed by this Court.[5] Long ago, our former Court of Appeals made it clear that "the court granting the divorce retains jurisdiction to revise orders relative to the care and custody of children." *Duncan v. Burnett,* 292 Ky. 269, 166 S.W.2d 419, 421 (1942) (involving custodial parent's motion to relocate to Pennsylvania). The question of Daughter's care and custody is a continuing matter to be considered whenever it is properly brought before the family court. *Gates v. Gates,* 412 S.W.2d 223, 224 (Ky.1967) (citing *Cole v. Cole,* 299 Ky. 319, 185 S.W.2d 382 (1945)). When, by the exercise of its continuing jurisdiction, the family court enters an order regarding a minor child's care and custody, that order "is an appealable order and this Court may review it." *Gates,* 412 S.W.2d at 224 (citing *Duncan,* 166 S.W.2d at 421); *Witt v. Witt,* 307 S.W.2d 1, 3 (Ky.1957) ("[W]e can review such questions as maintenance, alimony and the custody of minor children.").

 We conclude that there is ample authority allowing our review of the order from which this appeal is taken because it relates specifically to Daughter's care and custody. *See Gates,* 412 S.W.2d at 224;

Louise E. Graham & James E. Keller, 15 Ky. Prac. Domestic Relations L. § 13:1 (2010) (Order of custody "is an appealable order, although not a final judgment in the constitutional sense."); Sheryl G. Snyder, Griffin Terry Sumner, & Matthew C. Blickensderfer, 19 Ky. Prac., Appellate Prac. § 5:5 (2010–2011)(Motion related to care and custody of minor child "is a final and appealable order, as is any custody order even though it is continuously reviewable by the trial court.").

### *Counseling order*

Mother contends the family court abused its discretion in denying her motion that it "enforce" its March 4, 2010 order that Daughter and Mother undergo reconciliation counseling.[6] This characterization of the proceedings is inaccurate and not useful for purposes of our review. We must revisit and supplement the factual and procedural history relevant to this issue.

After the family court initially ordered counseling on the recommendation of the expert witness, Dr. Feinberg, Daughter and Mother attended a counseling session with a family counselor, Marcia Malone Bell. It did not go well, and Daughter left the session in tears. Father refused to force Daughter to attend additional counseling, and Mother brought the matter to the family court's attention in a "motion to compel compliance with original order for

---

5. Father also argues that Mother's appeal must fail because she did not file a motion for additional or more specific findings of fact pursuant to CR 52.04. That argument would have merit only if Mother were arguing that the order should be reversed because it does not contain the findings of fact necessary to support the legal conclusion which she does not. CR 52.04. The argument warrants no further discussion.

6. The parties and the family court have referred to this counseling as "reunification therapy," but it appears that is not the correct terminology. Expert witness Dr. Feinberg called the proposed therapy "reconciliation counseling," and the treating therapist who undertook the counseling specifically testified that she would not refer to her treatment as "reunification therapy."

reunification counseling[.]" [7]

■ The judge of the family court re-evaluated the matter. He met with Daughter *in camera* twice. During those meetings, Daughter stringently expressed resistance to additional counseling and other reconciliation efforts. In her testimony, family therapist Bell expressed her concern that "pushing" Daughter into a reconciliation attempt might be counterproductive. The family court conducted additional proceedings before making its ultimate determination on November 22, 2010, denying Mother's motion for additional reconciliation counseling.[8]

■ Counseling is one of many tools a family court has in effecting its purpose of "strengthen[ing] and preserv[ing] the integrity of the family and safeguard[ing] marital and familial relationships." KRS 23A.110(1). Whether to order counseling in a given case is a matter within the family court's sound discretion. *See Brown v. Brown,* 2007–CA–001041–ME, 2007 WL 4127678 (Ky.App. Nov. 21, 2007).[9] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999)

(citation omitted); *cf. Kuprion v. Fitzgerald,* 888 S.W.2d 679, 684 (Ky.1994).

In this case, the family court's termination of counseling was not an abuse of discretion because the evidence supported a conclusion that reconciliation counseling would be unsuccessful and possibly counterproductive.

### *Relocation, custody, and timesharing issues*

Before we address Mother's argument that the family court improperly allowed Father to alter, or violate, that court's timesharing and custody orders, we must address the family court's reliance on Kentucky's version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), KRS 403.800 *et seq.* as a means to resolve issues related to Mother's motion to enforce the existing order. The family court appears to equate a jurisdictional question—whether Father and Daughter had sufficient connection with Texas to divest the Fayette Family Court of jurisdiction—with the factual question actually before the court—whether Father had relocated to Texas with Daughter, thereby interfering with Mother's exercise of joint custody and timesharing rights under the family court's prevailing order.[10]

---

7. The full title of the motion was, "Verified motion for immediate return of minor child to the jurisdiction, motion to compel compliance with original order for reunification counseling and compliance with decree of dissolution entered August 26, 2002."

8. Strictly speaking, the court's order denied the motion for "enforcement" of the original order for reconciliation counseling. This amounted to an order discontinuing counseling.

9. We have cited to this unpublished opinion pursuant to the authority of CR 76.28(4)(c). We also note that Mother has asserted that the family court's order discontinuing recon-

ciliation counseling should be reviewed for an abuse of discretion, and Father has not disputed application of this standard.

10. The exact wording of the relevant portion of the order was as follows: "The Court believes the Respondent [Father] and the minor child are sufficiently in the jurisdiction by virtue of the minor child having a karate class and choir practice in Kentucky, and the Respondent having a Kentucky driver's license and a house in Kentucky. The Court does not believe that the move to Texas by the Respondent [Father], his spouse, and Daughter, is sufficient to divest this Court of jurisdiction under the UCCJEA."

The role of the UCCJEA was misconceived here.

■ The UCCJEA was enacted "to discourage forum shopping, child snatching[,] and persistent relitigation for custody." Graham & Keller, *supra*, § 14.22, n. 1. The Act was not intended as a tool to resolve substantive factual questions upon which custody or visitation/timesharing determinations must be based. To the extent the UCCJEA was applied in that way here, it was error. No jurisdictional issue was before the court. We need not further address the UCCJEA except to recognize Mother's argument that the family court's failure to enforce the current custody and timesharing order has opened the door for Father to engage in the kind of forum shopping the Act seeks to avoid.

We turn now to Mother's remaining arguments that the family court erred by entering the November 22, 2010 order without applying *Pennington v. Marcum*, 266 S.W.3d 759 (Ky.2008), failed to modify the prevailing custody and timesharing order, and yet also failed to find that Father violated that order by relocating to Texas with Daughter. We are persuaded by Mother's argument and conclude that the family court should have applied *Pennington* in this case.

*Pennington* is significant in Kentucky's domestic relations jurisprudence because it is in that case that the Supreme Court "address[ed] the nature of child custody, the effects of relocations, and when and how motions relating to relocation after a custody award should be brought, in an effort to establish clear precedent." *Pennington*, 266 S.W.3d at 763. As they are applicable here, we will first discuss the substantive points of law clarified by *Pennington*, and then the procedural guidance offered by that case.

*Pennington* makes clear that the term *custody* "means more than who has physical possession of the child." *Id.* at 767. Rather, custody refers to who has "responsibility for and authority over [the parties'] children...." *Id.* at 764. In the case before us, Mother and Father were awarded "joint custody, wherein both parents are equal legal custodians[.]" *Id.* at 767.

■ The terms *visitation* and *timesharing* refer to "how much time a child spends with each parent...." *Id.* at 767. Although these terms are often used interchangeably, the term "visitation" is more appropriate where sole custody has been awarded; "timesharing" is the more appropriate term where custody is awarded jointly. *Id.* Significantly, when parents are awarded "joint custody[,] decision-making is ... vested in ... both [parents], and how often the child's physical residence changes or the amount of time spent with each parent does not change this." *Id.*

Next, there is the question of what our courts mean when we refer to a *relocation*. Obviously, if a custodial parent moves across town, he or she has relocated in a technical sense, but only in the rarest of cases would such a move affect a party's custodial or visitation/timesharing rights. On the other hand, a move across the country, except in equally rare cases, certainly would require some modification. Pre-*Pennington* cases offered little guidance on this point.

Pre-*Pennington* discussion of the kind of relocation that would give rise to custody and visitation/timesharing issues lacked sophistication of thought or analysis. A relocation was simply defined in terms of the distance between the parents' respective residences following a proposed relocation. *See, e.g., Wallace v. Wallace*, 224 S.W.3d 587, 592 (Ky.App.2007) (In a relocation case, "the trial court shall conduct a hearing and establish a visitation schedule

which is reasonably based upon the distance between the parties' residences."). For example, the 1998–1999 Kentucky Special Task Force on Parenting and Child Custody proposed that a party considering relocation be required to give advance written notice of any intent "to relocate more than fifty (50) miles away or outside the Commonwealth." *Fenwick v. Fenwick*, 114 S.W.3d 767, 778 fn. 33 (Ky.2003), *overruled by Frances v. Frances*, 266 S.W.3d 754 (Ky.2008) *and Pennington*, 266 S.W.3d at 770. Our focus solely on geography created practical problems for the domestic relations bench and bar. *Pennington*, for the first time it appears, takes a slightly different view.

*Pennington* clearly indicates that distance is not the only factor. Rather, a court should consider both the "distance of the relocation *and the means of the parties*." *Pennington*, 266 S.W.3d at 770 (emphasis added). These two factors are directly proportional in that the greater the distance between the parents' respective residences, the greater the resources necessary to comply with the existing order.

Relocation resulting in what most would consider a short distance between parents might still require modification of custody or timesharing if the parents' means are very modest; relocation resulting in a great distance between leisure-class parents might not. *Pennington* makes clearer that a relocation is not simply a quantitative, but a qualitative, assessment. The assessment can be facilitated by asking, "Will the facts and circumstances of this relocation impact the existing custodial or visitation/timesharing rights of the parent who is not moving?" Still, "[e]very case will present its own unique facts, and the change of custody or modification of visitation/timesharing must be decided in the sound discretion of the trial court." *Id.* at 769.

Father argues that *Pennington* is not implicated in this case because, although he "has expressed an interest in relocating, . . . there is no reason for believing that it would change the *status quo* orders." In effect, Father is arguing here that the parties' resources are sufficient, or the totality of the circumstances are such, that there is no need for a modification of custody or timesharing, and so no need for the family court to do anything. In the order from which this appeal is taken, the family court agreed with Father. We disagree.

■ Obviously, a relocation such as this, with its panoply of changes to Daughter's life, should not occur unless it is in her best interests. A decision to establish a new residence for a child far across the country is of such great moment that, absent court approval, the decision must be made by both joint custodians. *Pennington*, 266 S.W.3d at 768 (" '[T]he essence of joint custody is shared decision-making[.]' "), *quoting Fenwick*, 114 S.W.3d at 789. A unilateral decision by one of two joint custodians is what Justice Venters would call a "pre-emptive move [and] the ultimate usurpation of the status of 'sole custodian' despite the joint custody decree then in effect." *Pennington*, 266 S.W.3d at 774 (J. Venters, dissenting). And so it was in this case.

■ Because the joint custodians failed to agree about relocating Daughter, "the trial court, with its continuing jurisdiction over custody matters, must conduct a hearing to evaluate the circumstances and resolve the issue according to the child's best interest." *Burchell v. Burchell*, 684 S.W.2d 296, 300 (Ky.App.1984). The family court failed to do this.

This brings us to the procedural issues. There is an underlying point of contention creating substantial confusion and friction

between the parties; that is, which of the parties must bear the burden of proving what is in Daughter's best interests? Mother argues that Father attempted to make her carry that burden by filing a "notice" rather than a motion. Mother's theory is that Father believes, albeit erroneously, that by ignoring her rights as a joint custodian and filing a "notice" of intent to relocate Daughter, Mother would be left with one option—file her own motion to amend custody from joint to sole, vested in her, and bear the burden of establishing that custody modification was in Daughter's best interest. Mother avoided that circumstance by seeking enforcement of the existing order.

Father effectively agrees that he expected Mother to carry the burden of proof. In his brief, Father paints Mother as "a litigant who has been determined to avoid difficult burdens of proof, refusing to advance motions before the Family Court that would require her to prove her assertions, and further refusing the Family Court's repeated invitations to seek writs of mandamus or prohibition...."

We need not decide whether either or both parties were strategically jockeying for a position from which they could defend the *status quo* rather than bear the burden of proof. We are satisfied that our jurisprudence is clear enough to render fruitless any such strategy when it is attempted. We return to *Pennington* for a start.

It is important to note the Supreme Court's recognition in *Pennington* that parties are often confused "due to the unique nature of their shared (joint) custody or split (sole) custody." *Id.* at 767. When it comes to the authorization needed when a relocation is contemplated, "parties often ask for one thing when they are actually seeking the other...." *Id.* As *Pennington* indicates, family courts must assume an active role in dispelling this cloud of "confusion that surrounds relocation, custody and timesharing/visitation." *Id.* at 768. To demonstrate this point, *Pennington* uses the fact pattern in the very case it overrules, *Fenwick v. Fenwick.*[11]

As *Pennington* explains, in *Fenwick,* "[t]he mother [who shared joint custody with the father] filed a motion requesting the court's approval to relocate with the children[,]" but she did not move the court for modification of custody or timesharing. *Id.* The father, too, filed no motion to modify custody or timesharing; instead, he simply "objected to the motion, arguing that relocation is contrary to the children's best interests [and] that the established time-sharing schedule better serves the children's needs[.]" *Fenwick,* 114 S.W.3d at 772. *Pennington* indicates that family courts should consider the substance of the filings rather than their form; in *Fenwick,* the court's initial "focus *should have been* on whether an actual change in custody was being sought[,]" *id.* (emphasis added), despite the fact that neither party put custody in issue. And ultimately in *Fenwick,* "the mother's motion to relocate ended up resulting in a modification of timesharing due to relocation[,]" *id.,* another issue the parties did not raise directly.

11. Despite overruling *Fenwick* "[t]o the extent [it] is inconsistent with this Opinion[,]" our Supreme Court still finds merit there. *Pennington,* 266 S.W.3d at 770. Much of *Fenwick* is consistent with *Pennington* which itself cites some analysis from *Fenwick* with approval. *Id.* at 768 (quoting *Fenwick,* then stating it "is correct."). Furthermore, in addition to using the fact pattern of *Fenwick* as the foundation for the analysis, *Pennington*'s author, Justice Noble, found particular merit in *Fenwick*'s "excellent discussion of" our Kentucky courts' "struggle[] with what part physical or residential possession of the child plays in each type of custody." *Id.* at 767 fn. 5.

Like the mother in *Fenwick,* Father filed no motion to modify custody or timesharing. Instead, he simply informed the court that he intended to relocate Daughter to Texas. Soon thereafter, without Mother's agreement, Father did establish Daughter's residence in Texas, so that had he been seeking anything from the court, it would have been more akin to forgiveness than permission. And like the father in *Fenwick,* Mother did not file a motion for a change in custody or timesharing; she objected to the relocation and sought to enforce the existing order.

In the order we are reviewing, the family court recognized Daughter's "current residence [is] in Texas[,]" yet stated that it "does not believe that there are any actions alleged in [Mother's] Motions that show a failure of [Father] to abide by the agreement" incorporated in the existing order regarding custody and timesharing. Nothing addresses Father's acknowledged unilateral decision-making in contravention of the joint custody order; and nothing addresses whether any aspect of the acknowledged relocation[12] is in Daughter's best interests. Therefore, we must reverse and remand the family court's order for a hearing in accordance with *Pennington.*

Owing to the parties' confusion regarding the burden of proof, we now address that issue.

■■■ Arguing before the family court, Father claimed that joint custody has become unworkable, leading this Court to believe there is a possibility that Father desires a change in custody from joint to sole, vested in him. If upon remand, he maintains that position, he must bear the burden of persuading the family court that Daughter's best interests require such a change of custody. *Pennington,* 266 S.W.3d at 769 ("The party seeking modification of custody or visitation/timesharing is the party who has the burden of bringing the motion before the court."). If the family court, mindful that Father seeks a change in custody to accommodate his own move to Texas, is persuaded that custody change is in Daughter's best interest, Father may then lawfully proceed with the move without further approval from Mother. *Wilson v. Messinger,* 840 S.W.2d 203, 204 (Ky.1992) (A parent with sole custody "cannot, in today's mobile society, be forced to remain in one location in order to retain custody.").

If Father fails to meet his burden for a change of custody, or "[i]f neither party wishes to change the nature of the custody," then *Pennington* still requires "the [family] court [to] determine[ ] that it is in the best interest of the child to relocate. . . ." *Id.* at 770.

The Supreme Court in *Pennington,* which did not have the issue squarely before it, is not as direct as we would like in addressing which party bears the burden of establishing that the relocation itself is, or is not, in the child's best interest. On the one hand, *Pennington* says that "[a] residential parent [such as Father] who

---

**12.** At times, Father argues that Texas was merely a "second residence" and not a relocation. At other times, Father asserts that the relocation is simply a part of his "travels throughout the United States with M[olly.]" This, however, is inconsistent with the family court's reference in its order to Daughter's "current residence in Texas[.]" The record does not support a conclusion that Daughter's connection with Texas was only as a vacation destination. *See Harsacky v. Harsacky,* 930 S.W.2d 410, 414–15 (Ky.App.1996). The "notice" Father filed made reference to his current wife's conduct of a business from Texas, to being near relatives in Texas, and to school and church options for Daughter. Ignoring semantics, no one denies that Father established a residence for Daughter in Texas— that is a relocation, even if she maintains contacts in Kentucky.

wishes only to change the visitation/timesharing due to his relocating with the child may bring the motion to modify visitation/timesharing under KRS 403.320." *Pennington,* 266 S.W.3d at 769. The only logical motion to modify timesharing by the relocating parent would be one to reduce the timesharing afforded the non-primary residential parent. If Father specifically chooses that course, he clearly bears the burden.

But why would any relocating primary residential parent file any motion if, by doing nothing as Father has done here, he can shift the burden of proof to the non-relocating parent? Yet that is what the following passage from *Pennington* seems to imply.

> [I]f the only interest of the opposing party is to object to relocating the child, but not to alter joint decision-making, then [s]he is seeking to have the existing visitation/timesharing arrangement changed, and need only establish that it is in the child's best interests not to relocate, which would thereby change the existing visitation/timesharing situation.

*Pennington,* 266 S.W.3d at 769. This sentence effectively equates a party's opposition to relocation with her desire to modify timesharing. But we do not believe the Supreme Court ever intended this passage to place upon the party who simply opposes relocation the burden of proving the negative proposition that relocation is not in the best interests of the child. We offer the following reasons.

**First,** if this passage is taken literally, it is logically unsatisfying. Consider the passage in this light: "if the only interest of the opposing party is to object to relocating the child," and if it is "establish[ed] that it is in the child's best interests not to relocate," there would be no reason to "change the existing visitation/timesharing situation." *Id.* There is, of course, one exception to that statement. That exception is when a primary residential parent proposing relocation, upon hearing the determination that relocation is not in the child's best interests, decides to relocate without the child. But *Pennington* does directly address that situation. "[I]f a parent who has been the primary residential parent relocates and the child does not, the primary residential parent will change." *Id.*

Second, we have great doubts that our Supreme Court intended to create a set of circumstances that allows a relocating primary residential parent to engage in the very burden-shifting strategy Mother accuses Father of attempting. If that were so, a primary residential parent such as Father would never be motivated to bring the motion to reduce timesharing under KRS 403.320, but would instead do nothing and expect the family court to impose the burden on the parent opposing relocation.

Third, the need for a change in timesharing is a consequence of the relocation, not the other way around. In other words, if there were no relocation, there would be no need to modify timesharing. Therefore, the preliminary issue is whether relocating the child is in that child's best interest. The party proposing relocation would bear that burden of proof since he is "[t]he party holding the affirmative of [the] issue [and] must produce the evidence to prove it." CR 43.01. Since the party desiring relocation "would be defeated if no evidence were given on either side[,]" *id.,* the party desiring to relocate bears the burden of proof.

Fourth, the parent proposing relocation knows more about the proposed move, and has known about it longer than anyone, and is therefore in the better position to inform and convince the family court.

On the other hand, the non-primary residential parent, while opposing the child's relocation, may not object to her former spouse's relocation. *Pennington* notes the obvious, that such a parent likely desires to become the primary residential parent. If so, she must seek an order for modification of that designation. This is technically a motion for modification of timesharing under KRS 403.320. *Pennington*, 266 S.W.3d at 769 (Non-primary residential parent "wanted . . . to become the primary residential parent, which would be a modification of timesharing under joint custody."). As with any other motion to increase timesharing,[13] the parent who brings such a motion would bear the burden of proving that the change in designation is in the child's best interests.

Therefore, we interpret *Pennington* as holding that, between joint custodians, and absent the non-primary residential parent's motion to modify timesharing, including naming her as primary residential parent, the relocating parent always bears the burden of proving relocation is in best interests of the child.

In this case, Mother did not file a motion for change of custody and she did not file a motion for modification of timesharing. She simply filed her objection to Daughter's relocation claiming it violated her joint custodial rights, and pursued enforcement of the original order of custody and timesharing. Therefore, on remand, Father will bear the burden of establishing that relocation is in Daughter's best interests.

If Father fails to meet his burden of establishing that relocation is in Daughter's best interests, the original order of custody and timesharing must be enforced. If Father fails to comply with the order, Mother may request that the family court exercise its contempt powers to compel compliance.

### Conclusions

The family court's discontinuation of reconciliation counseling does not constitute an abuse of discretion because it was based upon evidence of record.

It was error, however, to fail to conduct a hearing to determine whether Father's unilateral decision to relocate to Texas with Daughter was in her best interests. We therefore vacate those portions of the family court's order which relate to Daughter's relocation to Texas and the concomitant issues of custody and timesharing, and we remand the matter for further proceedings consistent with this opinion.

WINE, Judge, Concurs.

LAMBERT, Senior Judge, concurs and files separate opinion:

I have concurred with the majority opinion because I believe it to be legally sound. I write separately, however, to express the view that as future reconciliation between M.H. and her mother appears to be virtually impossible, little will be gained by a hearing on remand.

In strong terms M.H. expressed extreme hostility toward her mother, and the therapists who interviewed and counseled M.H. expressed little or no hope of any future reconciliation between them. The trial judge expressed a similar view after interviewing the child *in camera* as fol-

---

**13.** Of course, the bearer of the burden of proof is always the party moving to modify visitation/timesharing, whether the motion seeks an increase *or* a decrease. However, we believe it unlikely that the non-primary residential parent who opposes relocation would be moving for a decrease in visitation, and if she did, we doubt the relocating parent would oppose it.

lows: "She doesn't want a relationship with [Mother]. Right now [M.H.] hates Mother and doesn't want to see [her]."

While parents are legally entitled to end their marriages and establish relationships with others, such behavior may well provoke extremely negative reactions in their children. When those negative reactions occur, parents must accept their own culpability for the result. Mother made a decision to establish a relationship with another person. Thereafter, she and her partner left Kentucky for California where they remained for a while. Then they returned to Kentucky. It appears that the partner, a person who had formerly lived as a woman, had surgery to render herself physically male. Thereafter, the partner changed his name and the two married. Along the way, Appellant's daughter was deceived in many respects. There is no wonder that the daughter is hostile toward her mother. For a thirteen-to-fifteen-year-old child, such would be inevitably traumatic.

In this opinion, we have held that the trial court erred in failing to hold a hearing on whether the child's father and his wife could relocate with the child to Texas. We have held that he bears the burden of proving that such relocation is in the child's best interest. While I believe this to be legally sound, in view of the virtually nonexistent possibility of a meaningful relationship between the child and her mother who resides in Kentucky, the child's best interest would seem to follow the family unit into which she is integrated and with whom she identifies.