RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0816-MR

NICKLAS WILBURN                                                                APPELLANT

v.
APPEAL FROM GREENUP FAMILY COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 20-CI-00189

KRISTIN WILBURN                                                                  APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: ACREE, EASTON, AND GOODWINE, JUDGES.

EASTON, JUDGE: The Appellant ("Nick") questions the Greenup Family Court's

decision denying a motion to modify the parties' joint custody timesharing

agreement as to their daughter ("Child"). We vacate the order of the family court

and remand for needed findings of fact.

## FACTUAL AND PROCEDURAL HISTORY

The parties were married in 2018 and separated in 2020. Child was born during the short marriage. In 2021, a settlement agreement ("Agreement") was signed by the parties and incorporated into their Decree of Dissolution of Marriage. The Agreement included joint custody of Child with equal timesharing between the parties.

In April 2022, Nick filed his first motion to modify the parties' timesharing. He asked the circuit court to name him as Child's primary residential custodian. Nick alleged that the home Appellee ("Kristin") shared with Child was unsuitable. He claimed the house was in "deplorable" condition and was full of animals and their droppings. Nick additionally asserted Child would return to his home with unexplained bruising, skin infections, and a bad smell. Because of these allegations, the family court ordered the Cabinet for Health and Family Services ("Cabinet") to open an investigation.

The family court conducted a hearing on Nick's first motion in June 2022. Two Cabinet workers testified about their observations of Kristin's home. In addition, the Cabinet's report was entered into evidence. The general conclusion of the Cabinet was that while the house was dirty and there was evidence of multiple animals in the home, the Cabinet did not consider the home to be "deplorable." This indicates a peculiar standard of "not deplorable" even if

clearly filthy. Based on this testimony, the family court denied Nick's motion to modify. A subsequent motion to alter, amend, or vacate was likewise denied. Nick did not appeal the denial of his first motion.

Nick promptly filed another motion to modify in September 2022, again asking the family court to name him primary residential custodian of Child. This motion alleged Kristin had moved and would not provide her new address. Nick again expressed concern over the conditions of Kristin's residence, based on the condition of the home she had previously left and because she refused to allow him to see her current residence. Nick additionally presented concerns he had about Kristin's mental health. Although Kristin indicated she has bipolar disorder, the record contains no documentary proof of such a diagnosis.

The Cabinet was again ordered to investigate Kristin's home. This delayed the second hearing for some months. Kristin was ordered to provide Nick with her address. She was also ordered to comply with discovery requests and to submit to a deposition. Kristin failed to appear for her deposition, and she did not respond to the discovery requests. Kristin was acting *pro se* at this stage in the case.

The Cabinet's next report was filed in early January 2023. This report outlined continuing environmental concerns in Kristin's home. Even so, the

Cabinet ultimately concluded that neither home was inappropriate for the Child, apparently because the unexplained standard of "deplorable" had not been reached.

The family court held a hearing on April 25, 2023, and May 2, 2023. As a sanction for failing to abide by the family court's orders regarding her deposition and discovery, the family court did not allow Kristin to present any evidence. The family court also held Kristin in contempt for violating previous orders. Kristin had been "difficult" throughout the case, and the family court showed remarkable patience with her, even though the family court held her in contempt twice.

At the hearing, Nick and his current wife ("Katie") testified. They both told of the condition of the home Kristin lived in previously. After Kristin vacated that residence, the landlord allowed Nick and Katie to enter the home to inspect and take photographs showing the condition Kristin left the home in. These photographs show a house that was filthy, filled with garbage, animal droppings, and even the carcass of a dead animal.

Nick also presented social media posts and videos showing Kristin behaving inappropriately and using foul language, sometimes while the Child was present. Nick testified Kristin's house smelled terrible, and it was like what Child smells like when she is returned to him. As he had previously testified at the prior hearing, Nick stated the smell was so bad that Child had to be immediately bathed

-4-

upon return to him. Nick again testified that the Child always returned to him with new bruises and scratches and other various injuries.

Nick additionally testified that he is concerned about Child's mental health. He told the family court that Child never wants to go back with Kristin when his timesharing ends. He further stated Kristin is always hostile and confrontational at exchanges. Katie, who is an elementary school principal and has training in trauma responses in children, testified that she believes Child shows trauma response symptoms after being with Kristin.

The family court again overruled Nick's motion for modification, basically, because the evidence on the new motion for modification established no new conditions. This appeal follows. Nick's sole argument on appeal is that the only evidence the court could consider was the evidence he presented. The argument continues that, since Nick's evidence was unopposed, the family court was required to grant his motion.

**STANDARD OF REVIEW**

A trial court's determinations as to timesharing are reviewed for abuse of discretion. *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000). "The test is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion." *Moore v. Moore*, 626 S.W.3d 535, 539 (Ky. 2021). "The test for

-5-

abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). A finding of fact is clearly erroneous if not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). We review a family court's legal conclusions under the *de novo* standard. *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003). For our review, we must have sufficient findings.

## ANALYSIS

As a preliminary matter, we note that Kristin has failed to file an appellee brief. This failure gives us options for our review. Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3). On the other hand, Nick's brief is wholly inadequate. In substance, it is not more than three pages and contains not one citation to legal authority. This violates RAP 32(A)(2).

In the context of briefing failures, "[t]he decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Because of the importance of the issues presented about Child and the uncomplicated record, we have decided to review the record and adjudicate the appeal despite the little assistance provided by the parties. Ultimately, the combination of poor briefing of the case and the lack of

factual findings by the family court compels us to vacate the order and remand the case to the family court for further proceedings.

A motion to modify a final order granting timesharing is indirectly governed by KRS[1] 403.320(3). *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008). This statute states: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." KRS 403.320(3). When determining modification of timesharing, only the best interests of the child need to be considered. *Pennington*, 266 S.W.3d at 770.

Timesharing modification motions are "actions tried upon the facts without a jury," to which CR[2] 52.01 applies. This "require[s] specific findings of fact and separate conclusions of law, followed by an appropriate judgment." *Anderson v. Johnson*, 350 S.W.3d 453, 454 (Ky. 2011).

> On motions to modify timesharing, the judge has several factors to consider in making the determination of what the best interests of a child are, which are partially listed in KRS 403.270, but include all relevant *facts*. The basis for a modification decision is thus fact-driven rather than law-driven, because the legal standard is whether the

---

[1] Kentucky Revised Statutes.

[2] Kentucky Rules of Civil Procedure.

relocation is in the best interests of the child, which is stated plainly in the statute. To review the judge's decision on appeal, it is important to know what facts the judge relied on in order to determine whether he has made a mistake of fact, or to even determine if he is right at law, but for the wrong facts. If a judge must choose between facts, it is clearly relevant which facts supported his opinion.

*Id.* at 455 (emphasis in original).

The circuit court in this case twice held hearings on Nick's motions to modify. But the most recent order and the basis for this appeal, states as its conclusion only:

> The allegations contained in the immediate motion are the same allegations that were contained in the original motion that was denied by the Court. The Court has heard no new allegations and the report of the Cabinet is to the effect that they have examined the Petitioner's living conditions and have no concerns with [Child] being with her mother. Therefore, IT IS THE ORDER OF THE COURT that the Respondent's Motion to Change Custody and/or Timesharing is DENIED.[3]

Because this order references the earlier motion, hearings, and order, we refer back to the circuit court's order of July 19, 2022, in which it states:

> Based upon the testimony presented, including the investigation by the Cabinet for Health and Family Services, the COURT HEREBY ORDERS that the Motion to Change Timesharing be OVERRULED. The COURT FINDS that there are not sufficient grounds presented to the Court to warrant a change in the current timesharing arrangement. Therefore, the parties are

---

[3] Circuit Court's Order, dated May 17, 2023, Record at 271.

-8-

ORDERED to continue to share the children according to the current Order that is in effect.[4]

We find the order in this action analogous to the one that was remanded in *Anderson*. Unlike the order in the present case, the order in *Anderson* minimally mentioned the overall standard of the best interest of the child. In neither case did the trial court give factual reasons to support the conclusion that modification was not in the best interest of the child. *Id.* at 457.

As argued by Nick in his scant brief, the only evidence presented at the final hearing was in favor of modification. And some of that evidence, specifically the photographs of Kristin's previous home and her inappropriate videos, is particularly disturbing. While it is true that the party seeking modification bears the burden of persuading the circuit court that the child's best interests require such a change (*see N.B. v. C.H.*, 351 S.W.3d 214, 224 (Ky. App. 2011)), the circuit court should still outline the facts it relied upon when determining that burden has not been met by the movant.

"There are several factors courts must consider in determining whether a modification of timesharing is in a child's best interest, which are partially listed in KRS 403.270." *Childress v. Hart*, 592 S.W.3d 314, 317 (Ky. App. 2019). The relevant factors enumerated in KRS 403.270(2) include: the

---

[4] Circuit Court's Order, dated July 19, 2022, Record at 193.

wishes of the parents; the wishes of the child; the relationship of the child with parents and siblings; the motivation of the adults; the child's adjustment and proximity to home, school, and community; the mental and physical health of all parties; and the likelihood that a party will allow the child frequent contact with the other parent. The circuit court in this instance did not discuss or analyze any of these factors in relation to the facts presented in this case. "The judges presiding over family law matters must be mindful of the ramifications of their written orders. A bare-bone, conclusory order such as the one entered here, setting forth nothing but the final outcome, is inadequate and will enjoy no presumption of validity on appeal." *Keifer v. Keifer*, 354 S.W.3d 123, 126 (Ky. 2011).

## CONCLUSION

For the reasons stated above, the order is vacated, and the case is remanded to the Greenup Family Court for further fact-finding and analysis to determine the Child's best interest regarding timesharing by the parents. It is now over two years since the original approved agreement for joint custody and equal timesharing. Recognizing the likelihood that intervening events may need to be considered, we do not direct the family court only to make findings on the previously submitted record on this appeal. The circuit court may revisit the entire issues of custody and timesharing/visitation on remand, making specific findings whether it grants or denies Nick's modification motion.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Brandon M. Music
Grayson, Kentucky